Van Dyke and another, Trustees, Appellants, vs. Tax Commission and others, Respondents.
First Wisconsin Trust Company, Trustee, Appellant, vs. Same, Respondents.

*May 9—June 4, 1940.*

For the appellants there were briefs by *Douglass Van Dyke,* attorney, and *George D. Van Dyke* of counsel, both of Milwaukee, and oral argument by *Douglass Van Dyke.*

For the respondents there was a brief by the *Attorney General, Harold H. Persons,* assistant attorney general, and *Neil Conway,* inheritance tax counsel, attorneys, and *Myron L. Silver* of counsel, and oral argument by *Mr. Persons* and *Mr. Conway.*

A brief was also filed by *Ramsdell, King & Linderman* of Eau Claire and *Oppenheimer, Dickson, Hodgson, Brown & Donnelly* of St. Paul, Minnesota, as *amici curiæ.*

ROSENBERRY, C. J.   George D. Van Dyke, a citizen of the United States, residing at Milwaukee, desired to create two trusts.   He was the owner of United States first liberty loan three and one-half per cent gold bonds of the par value of $270,000.   He had intended transferring the bonds.   Before any positive steps were taken, the bonds were called.   Having ascertained on November 15, 1935, that he could collect the bonds in silver dollars, he went to Chicago on November 25,

1935, taking the bonds with him and appointed the First National Bank of Chicago his agent. Desiring to receive payment of the bonds in silver dollars he was advised that they were not at hand, but on December 3, 1935, he was notified that the silver dollars had been shipped to the Federal Reserve Bank at Chicago. On December 6, 1935, accompanied by his son, Douglass Van Dyke, who took with him a power of attorney from William D. Van Dyke, Jr., he went to Chicago where he met George B. Luhman of the First Wisconsin Trust Company of Milwaukee at the First National Bank of Chicago. The trust instruments were then executed in the presence of the officer of the First National Bank of Chicago with the exception of the signature of William D. Van Dyke, Jr., who had previously executed the instrument as one of the trustees at Milwaukee. George D. Van Dyke being informed that the silver dollars were in the private vaults of the First National Bank at the Federal Reserve Bank of Chicago, went with Mr. Luhman and Mr. Douglass Van Dyke to the Federal Reserve Bank where 270,000 silver dollars were delivered to George D. Van Dyke. Thereupon he delivered 135,000 of said silver dollars to Mr. Luhman on behalf of the First Wisconsin Trust Company and 135,000 silver dollars to Douglass Van Dyke, trustee, and took receipts therefor from the trustees.

The donor, George D. Van Dyke, never had any intention of bringing the silver dollars to Wisconsin as they weighed approximately seven and one-half tons. There was no attempt at secrecy or evasion in the transaction, and the trust instruments expressly provided that full disclosure should be made to the taxing authorities of the state of Wisconsin.

The First Wisconsin Trust Company delivered the 135,000 silver dollars to the First National Bank of Chicago, and at its request they were credited to the account of the First Wisconsin National Bank of Milwaukee which bank thereupon credited the account of the First Wisconsin Trust Com-

pany. Douglass Van Dyke on the same day delivered the 135,000 silver dollars which he received, with the request that it open an account in the name of Douglass Van Dyke and William D. Van Dyke, Jr., trustees. The fund remained there until two days after Christmas when the trustees bought $10,000 par United States savings bonds for $7,500. They completed their investments about the middle of April, 1936, at which time they opened an account in the Marine National Exchange Bank of Milwaukee and transferred $3,000 or $4,000 of said amount to that bank. Douglass Van Dyke and William D. Van Dyke, Jr., trustees, are both residents of Milwaukee, and the First Wisconsin Trust Company, the trustee of the other trust, is a Wisconsin corporation located at Milwaukee, Wisconsin.

The trust agreement under which William D. Van Dyke, Jr., and Douglass Van Dyke are trustees was created for the purpose of giving to the donor's only grandchild a broader education and more liberal support and maintenance than it is the legal duty of her parents to provide or within their financial ability to supply. The beneficiary of the trust is Louise Lawrence Van Dyke, the minor granddaughter of the donor, and upon her death the remainder to her lawful issue, *per stirpes,* or if she leaves no issue then to Douglass Van Dyke, or if he is not then living, to his wife surviving, or if no wife survives him, then to the heirs at law of George D. Van Dyke.

The trust agreement under which the First Wisconsin Trust Company is trustee was created primarily for the support and education of the four foster children of Louise V. Hauxhurst who, however, take no interest in the trust, the income to be disbursed at the direction of Louise V. Hauxhurst, or in case of her death by a successor named in the trust instrument. On the death of all of the children the balance of the trust estate, if any, is payable to Louise Van Dyke Hauxhurst, if living, or if she is deceased, to such

persons as she shall have appointed by her last will and testament, and in default of such appointment to the heirs at law of George D. Van Dyke. The donor reserved no interest in or control of any kind or character over the trusts.

The plaintiff trustees made donees' returns to the proper taxing officers, attaching copies of the trust agreements and protesting that the transfers were not subject to the Wisconsin gift tax. The First Wisconsin Trust Company filed a donee's gift tax report on March 19, 1936. Douglass Van Dyke and William D. Van Dyke, Jr., filed a donee's gift tax report on March 10, 1936. J. H. Leenhouts, assessor of incomes, notified the plaintiff trustees that the gifts were subject to a tax under the laws of Wisconsin and that taxes would be certified for collection unless within twenty days a written protest was filed in his office. Protests were filed, proceedings were had before the county board of review, and the matter was brought before the Wisconsin Tax Commission, which entered an order confirming the assessment. The matter was then appealed to the circuit court where judgment affirming the assessment was entered on December 15, 1939.

The plaintiff trustees allege that the judgment in each case is erroneous for the following reasons:

"(1) The emergency gift tax by its express terms imposes no gift tax upon these transfers of tangible personal property located without this state, which said property was not without this state temporarily.

"(2) The act, if construed as imposing gift taxes upon these transfers, is unconstitutional because:

"(a) The state of Wisconsin lacks jurisdiction to impose gift taxes upon gifts *inter vivos* made without the state;

"(b) The classifications and progressive rates are invalid as applied to taxes on gifts *inter vivos* not made in contemplation of death;

"(c) The state of Wisconsin may not impose a tax upon the transfer *inter vivos* of money coined in the United States.

"(3) The assessments are void because against the trustees personally as donees, instead of against the beneficiaries.

The assessments are incomplete because the amounts payable have not been computed."

The state of Wisconsin claims the right to levy a tax upon the gifts in question by virtue of sec. 4, ch. 363, Laws of 1933, as amended. The pertinent provisions of sec. 4 are as follows:

"*Emergency gift tax.* (1) An emergency tax is imposed upon transfers of property, real, personal or mixed, or any interests therein or income therefrom in trust or otherwise, to any person, association or corporation, which are made subsequent to the effective date of this act and prior to July 1, 1935, in the following cases, except as hereinafter provided:

"(a) When the transfer is by gift from any person who at the date of such gift was a resident of the state.

"(b) When the transfer is by gift of property within the state or within its jurisdiction and the donor was a nonresident of the state at the date of such gift.

. "(c) No tax shall be imposed upon the transfer of any property which is taxable under the inheritance tax law of this state, and any tax paid upon the transfer of any property under the provisions of this section may be applied as a credit upon any inheritance tax which may be imposed under the inheritance tax law upon the same transfer, *and no tax shall be imposed upon any tangible personal property of a resident donor when such property is located without this state; provided, however, such property is not without this state temporarily.*"

Under the inheritance tax act gifts made in contemplation of death are regarded as a part of the estate of the deceased and taxed accordingly.

The plaintiff trustees contend that what the donor gave was silver dollars; that silver dollars are tangible personal property; that they were never within the state of Wisconsin, nor did the donor ever have any intention to bring the silver dollars within the state; that the gift was not taxable therefore because within the express language of the exception contained in sub. (1) (c).

On behalf of the tax commission it is claimed that this case is ruled by *Pearson v. McGraw* (1939), 308 U. S. 313, 60 Sup. Ct. 211, 84 L. Ed. 293. The circuit court did not have the benefit of this decision but reached the same conclusion. Briefly stated, the facts in *Pearson v. McGraw, supra,* are as follows: One Hayes, while a resident of the middle west, placed various intangibles in the possession of an Illinois trust company as agent. Hayes established a domicile in Oregon, but he continued to have the Illinois trust company retain the intangibles as agent, with the result that the ·intangibles were always physically present in Illinois. On August 8, 1935, six months before his death, Hayes directed the Illinois trust company to liquidate an amount of the intangibles sufficient to procure $450,000, and purchase therewith as his agent federal reserve notes of the face amount of $450,000. A few days prior to August 15, 1935, the trust company purchased $450,000 of federal reserve notes. On August 15, 1935, Hayes executed in Oregon a trust agreement under which the Illinois trust company was designated as trustee, and by which the decedent transferred to it as trustee the federal reserve notes in trust for the benefit of certain beneficiaries. The trust was irrevocable and decedent retained no interest or power whatsoever in respect to it. The trust company held the federal reserve notes under the trust agreement for about five days and then used the federal reserve notes to purchase bonds and other intangibles. Hayes died in 1936, at which time he was domiciled in Oregon. Oregon imposed a tax upon the transfer of the property as a transfer made by the decedent "in contemplation of death." The supreme court of Oregon held that the state was without jurisdiction to tax because neither the securities nor the cash used to purchase the federal reserve notes or the notes themselves were ever in Oregon but always in Illinois. The Oregon court held that the intangibles would have been taxable in Oregon under the facts of the case but in reliance on *Blodgett*

*v. Silberman* (1928), 277 U. S. 1, 48 Sup. Ct. 410, 72 L. Ed. 749, concluded that the federal reserve notes were tangibles and for that reason not taxable in Oregon. If Hayes had caused his agent to purchase silver dollars instead of federal reserve notes, the facts in *Pearson v. McGraw, supra,* with the exception of some immaterial details, would have been exactly parallel with the facts in this case. There would have been a transfer of tangibles made without the state of property that was not temporarily absent from the state. The supreme court of the United States, in disposing of the matter, said (p. 317) :

"On the facts of this case we believe that the various steps in the series must be considered as constituting but one integrated and indivisible transaction—a transfer by decedent of intangibles in contemplation of death. And we reach this result though each step in the series was real and though none was camouflaged or concealed. For basically the sale of intangibles, the acquisition of federal reserve notes, and their transfer under the agreement of August 15, 1935, were interdependent. [Citing cases.] From decedent's point of view, completion of the series of steps was necessary for consummation of his program to utilize $450,000 of his estate to provide for certain designated members of his family. Any step short of the final transfer would not have done it. The mere sale of the intangibles and the acquisition of the federal reserve notes had no functional or business significance apart from the August 15, 1935, transfer. That is emphasized here because they created no legal relations and gave rise to no vested rights interfering with decedent's continuing power of disposition. Taken as isolated transactions, they have meaning and significance only in relation to the third step, a conclusion made especially evident by the close sequence of events. Hence, it is no answer to say that because the first two steps were not irrevocable but could be recalled, the third step was not a necessary one in the series. For that is as immaterial as is the revocability of any donor's plan to make a gift in contemplation of death at any moment prior to its consummation. Admittedly decedent had such a purpose on the transfer of the notes. To hold that such

purpose was not present on the sale of the intangibles would be to isolate one part of the total transaction and to give it significance and meaning utterly inconsistent with the fact that the intangibles were sold for the purpose of acquiring the notes which, in turn, were to be placed under an irrevocable trust. Therefore we need not consider the nature of federal reserve notes, for in that posture of the case their taxability as such and in isolation from the whole transaction is not in issue.

"Hence to hold that there is a constitutional barrier to the tax sought to be imposed would be to make a fetish of form. It would make the principles of the decisions of this court on the constitutional power to tax devoid of any reason or function apart from a ritual of tax avoidance."

Mr. Justice STONE concurred in the reversal, but he was of the opinion that there is nothing in the constitution to compel a state to treat federal reserve notes for tax purposes as chattels were treated in *Frick v. Pennsylvania* (1925), 268 U. S. 473, 45 Sup. Ct. 603, 69 L. Ed. 1058, 42 A. L. R. 316.

This seems to be an intimation that under *Blodgett v. Silberman, supra,* federal reserve notes are not to be regarded as tangibles so far as taxation is concerned. The plaintiff trustees while commenting on some differences between the facts of this case and the facts in the Oregon case, contend that *Pearson v. McGraw, supra,* has little if any application to the taxation of a gift *inter vivos* made by actual delivery of tangible property in another state, and contend that the jurisdiction of the state of domicile of a decedent to impose an inheritance tax in respect to a gift made in contemplation of death is far broader than its jurisdiction to tax one of its residents in respect to a gift *inter vivos* or a sale made by him. This contention ignores the rationale of the decision in *Pearson v. McGraw, supra.* The court held that the transaction was in fact an exchange of intangibles for intangibles. The fact that in the process of making the exchange the settlor acquired tangibles was ignored because it had no real relation to the carrying out of the settlor's object.

Plaintiff appellants contend that Wisconsin has no jurisdiction to tax the transfer in this case because it occurred in another state. It is true that title to a chattel passes according to the law of the place where the chattel was at the time the transaction which passed the title occurred. 2 Beale, Conflict of Laws, p. 981, § 255.5. The argument is that what was transferred was silver dollars; that the silver dollars were at the time of the transfer in the state of Illinois, consequently Wisconsin has no jurisdiction to tax the transfer. This contention requires us to analyze a little more closely what happened under the facts of this case. The donor, domiciled in Wisconsin, desired to create a trust for the benefit of other Wisconsin residents. The trust *res* was to be the liberty bonds held by him or their proceeds. From the income to be derived from the investment by the trustees designated beneficiaries were to be supported and the title to the trust *res* ultimately transferred to certain designated persons, all of whom are residents of Wisconsin. In order to carry out this plan, the donor conceived the idea of procuring seven and one-half tons of silver dollars in the city of Chicago, proceeds of the liberty bonds, going with his trustees to Chicago and there delivering the silver dollars to them. Upon the delivery of the silver dollars the trustees promptly exchanged them for bank credits, securities were purchased and the execution of the trust proceeded with. The plaintiff appellants contend that although they received a gift in trust, that gift is not taxable because it reached their hands by way of a transfer of tangible property, that is, silver dollars, in the state of Illinois.

In disposing of this matter, the trial court said:

"It is incumbent on the court to view the transaction in the instant case in the light of what was really intended to be accomplished, and in the light of the absence of any real function or utility on the part of the silver dollars in connection with the consummation of the gift. For here the true purpose, as expressed in the trust agreements, and as dis-

closed by the acts of the donor and the trustees, was to convert intangible personal property of one kind (United States bonds) into another kind of intangible personal property (bank credits and investments in stocks, bonds or other securities) using in the intermediate steps of the process the acquisition of tangible property (silver dollars) as a device which possessed no utility in the making of the transfer."

It is considered that this conclusion of the trial court is strictly within the reasoning of the United States supreme court in *Pearson v. McGraw, supra.* In *Pearson v. McGraw,* as in this case, the real purpose of the donor was to exchange intangibles for intangibles. The court did not give effect to the purchase of federal reserve notes standing by itself nor consider whether they were tangibles or intangibles because it considered, as the trial court in this case considered, that the transaction was an integrated and indivisible one.

It is considered that the tax must be upheld for the reason that at the time of the transfer the situs of the silver dollars for the purposes of taxation was within the state of Wisconsin. The silver dollars were the tangible personal property of a Wisconsin resident but they were not "located" without the state. The word "located" as used in this statute clearly refers to situs and not to mere physical presence. Property that is temporarily without the state is not exempted because its situs is still within the state of Wisconsin. When it is taken from the state permanently it is "located" elsewhere. It was for many years a general rule that chattels were taxable at the domicile of the owner on the ground that the application of the maxim, *mobilia sequuntur personam,* made them taxable there. *McKeen v. County of North Hampton* (1865), 49 Pa. 519; 1 Beale, Conflict of Laws, p. 546; 2 Cooley, Taxation (4th ed.), p. 955, § 440.

The donor went to Chicago on November 22, 1935, having with him bonds of the par value of $270,000. He selected his agent, First National Bank of Chicago, to collect the bonds in silver coins of the United States. He was notified

on December 3, 1935, that the silver dollars were in Chicago, and on December 6, 1935, the silver dollars were delivered to him. On the same day he in turn delivered them to the trustees. The First Wisconsin Trust Company of Milwaukee on the same day delivered the silver dollars received by it to the bank, and received for them bank credit which was transferred to the First Wisconsin National Bank of Milwaukee. By the middle of April, 1936, Douglass Van Dyke and William D. Van Dyke, Jr., had completed the investment of the bank credit which they received, and transferred $3,000 or $4,000 to their bank account at the Marine National Exchange Bank of Milwaukee. Assuming that the silver dollars were tangible personal property the law attributes to them a situs which in the absence of any other fact is the domicile of the owner. Down to the time of their delivery to the donor or his agent, the silver dollars were the property of the United States, and as such had no situs for taxation either in Chicago or elsewhere. By delivery to the donor, or his agent, the silver dollars acquired a situs at the domicile of the new owner which was within the state of Wisconsin. If a citizen acquires tangible personal property permanently located in another state, such as a stock of goods kept for sale, the maxim would not apply. It is said in the textbooks on the authority of *Metropolitan Life Ins. Co. v. New Orleans* (1907), 205 U. S. 395, 27 Sup. Ct. 499, 51 L. Ed. 853, and other cases, the fiction that personal property follows the domicile of its owner cannot be allowed to obscure the truth, applies to taxation. Its application in this case reveals instead of obscuring the truth. The situs of personal property for the purposes of taxation is the domicile of the owner unless the property has acquired an actual situs of its own in a state or place other than that where the owner is domiciled. 2 Cooley, Taxation (4th ed.), pp. 955-981, §§ 440–451. See *Hutchison v. Ross* (1933), 262 N. Y. 381, 187 N. E. 65.

Since *Union Transit Co. v. Kentucky* (1905), 199 U. S. 194, 26 Sup. Ct. 36, 50 L. Ed. 150, it has been universally held that the state of domicile may not tax tangible property to its citizen located permanently in another state because it has no situs in the taxing state. The question for decision in that case was stated by Mr. Justice BROWN thus (p. 201):

"In this case the question is directly presented whether a corporation organized under the laws of Kentucky is subject to taxation upon its tangible personal property, permanently located in other states, and employed there in the prosecution of its business."

The property sought to be taxed by the state of Kentucky was refrigerator cars which were in use and located in other states, and it was held that cars so located and employed in other states, were not subject to the taxing power of Kentucky.

It is considered that the word "located" as used in section 4 of the Emergency Gift Tax Act is intended to exempt. from the operation of the section tangible personal property of a resident of Wisconsin which has acquired a situs without the state. To make this doubly sure the legislature annexed a proviso that it should not escape the tax if it was only temporarily without the state, meaning thereby that it should not be exempt if it had not acquired a situs for taxation without the state of Wisconsin.

While it may be said that the silver dollars were never within the state, and therefore could not be temporarily without it, it is considered too artificial a construction to place upon the language of the act. In legal effect the situation is the same as if the donor had carried with him the silver dollars to Chicago and there delivered them to the trustees. It is true he did not receive title to them while he was still within the state of Wisconsin, but at all times he was domiciled within the state, and the situs of the silver dollars for taxation purposes was referable to his domicile, so in contemplation of law their situs when he received title was in

Wisconsin although they and he were physically present in Chicago when he delivered them to the trustees. We think it is plain that the legislature intended to exempt from the operation of the section only such personal property as has acquired a situs without the state and is delivered there.

The plaintiff trustees argue that it was never the intention of the donor to bring the silver dollars to Wisconsin. That is clear from the statement of facts. He intended to dispose of them at once to the trustees who were in turn to exchange them for intangibles. Under the facts of this case his intent not to bring the silver dollars to Wisconsin is without legal significance.

The plaintiff trustees also contend that a transfer of silver dollars by gift *inter vivos* is immune from the Wisconsin gift tax and Wisconsin has no power to tax directly or indirectly the national currency. The gift tax is not a tax upon property. *Bromley v. McCaughn* (1929), 280 U. S. 124, 50 Sup. Ct. 46, 74 L. Ed. 226. It has been said that statutes imposing a gift tax and those imposing an estate tax are in *pari materia* and must be construed together, *Burnet v. Guggenheim* (1933), 288 U. S. 280, 286, 53 Sup. Ct. 369, 77 L. Ed. 748. Mr. Justice BRANDEIS in a dissenting opinion in *Untermyer v. Anderson* (1928), 276 U. S. 440, 450, 48 Sup. Ct. 353, 72 L. Ed. 645, said:

"The gift tax was imposed largely to prevent evasion of the estate tax by gifts *inter vivos,* and evasion of the income tax by the splitting up of fortunes and the consequent diminution of surtaxes."

For history and basis of gift taxes, see dissenting opinion *Heiner v. Donnan* (1932), 285 U. S. 312, 52 Sup. Ct. 358, 76 L. Ed. 772.

It is considered that the authorities do not sustain the plaintiff trustees' contention on that point.

In the consideration of the issues in this case we have assumed that silver dollars are tangible personal property.

There are intimations in the authorities which arouse robust doubt in our minds as to the correctness of this assumption. While circulating as a medium of exchange, not being an integrated part of the property or wealth of any particular jurisdiction and having a use or function entirely apart from any intrinsic value it may have, coin may well lose its character as a "tangible." It was the mobility of money, precious metals, and jewels that originally led to the adoption of the maxim *"mobilia sequuntur personam."* Being easily secreted it was held that its situs was that of the domicile of the owner. *Pullman's Palace Car Co. v. Pennsylvania* (1890), 141 U. S. 18, 22, 11 Sup. Ct. 876, 35 L. Ed. 613. See note 62 Am. St. Rep. 448. We have not found it necessary to reach a decision of this question and make this comment for the purpose of expressly reserving the question.

*By the Court.*—The judgment in each case is affirmed.