opinion. Tyson, Judge: In this proceeding there is no question but that petitioner was a citizen of France and an alien living in but not engaged in business in the United States at the times material to her transfer of property by gift on February 19, 1941. However, if she was a resident alien, as determined by respondent, then clearly the gifts involved herein are subject to the gift tax imposed by section 1000 of the Internal Revenue Code.[1] The questions (aside from the alternative third issue) presented for our redetermination are: First, was petitioner a nonresident alien not engaged in business in the United States at the time the gifts were made, and, if so, second, did the property transferred by gift consist of bonds, notes, or certificates of indebtedness of the United States, thus making the gifts exempt from gift tax under the provisions of Title .31, United States Code Annotated, § 750,[2] and the respondent’s regulations,[3] as contended by petitioner ? The respondent contends that the facts of record show that prior to and on February 19,1941, petitioner had a fixed intention to remain indefinitely in the United States and thus was a resident alien, and he further contends that, regardless of her status as a resident or nonresident alien, her acquisition of United States Treasury notes during January 1941 and transfer of them to the trusts were only for the purpose of avoiding gift taxes and formed no functional or business purpose apart from the transfers by gift and therefore were ineffectual for tax purposes. Regulations 108, section 86.4, supra, and also the earlier Regulations 79, article 4, provide a test of the term “resident” as used in the' Internal Revenue Code for gift tax purposes and states, briefly, “A resident is one who has his domicile in the United States * * * at the time of the gift. * * * All others are nonresidents. * * * Residence without the requisite intention to remain indefinitely will not suffice to constitute domicile. * * *” Both parties cite those regulations for the proposition that the test of petitioner’s residence is domicile and cite authorities to the effect that to change an established domicile to a new one there must be a fixed purpose to remain in the new location permanently or indefinitely. Axiomatic principles of law are that domicile once acquired is presumed to continue until shown to have been changed by two indispensable facts, namely, residence in the new locality and intention to remain there permanently or indefinitely; and, further, that intention, which must be more than a mere floating one, may- be determined from acts and declarations. Mitchell v. United States, 21 Wall. 350; Shilkret v. Helvering, 138 Fed. (2d) 925, affirming 46 B. T. A. 1163; Rosenberg v. Commissioner, 37 Fed. (2d) 808, affirming 10 B. T. A. 601; Pietro Crespi, 44 B. T. A. 670; Samuel W. Weis, 30 B. T. A. 478, and the authorities cited in those cases. There is no dispute between the parties as to the essential facts relating to the various acts and declarations of petitioner at times material to the first question herein, but they differ as to the ultimate conclusion to be drawn therefrom as to whether or not petitioner had changed her domicile or permanent residence from France to the United States prior to making the gifts on February 19,1941. On this record, we have concluded, and have found as an ultimate fact, that petitioner was a nonresident alien at the time the gifts were made. The facts herein lead clearly to that conclusion. The petitioner was a citizen of and domiciled in France at the time she fled that country to avoid persecution by invading Germans, with the intention of returning to France as soon as favorable conditions would permit. She was permitted to enter this country in October 1940, under a temporary visitor visa, as a “nonimmigrant” whose destination was “Argentina via N. Y.” and whose stay in the United States was limited for the purpose of a “visit to 3/16/41.” Prior to being granted permission to enter this country as a temporary visitor, petitioner was required to obtain a visa to another country in the Western Hemisphere to which she could proceed upon expiration of her United States visitor visa. From the time of her entry as a visitor until March 16,1941, she was under compulsion to leave this country at the termination of that period, unless through proper procedure the United States .Government granted her an additional stay as a visitor, and at no time material here was an additional stay granted nor did she, during that period, reenter the country as a quota immigrant. During that time petitioner had continuously told friends and her children that she intended to return to her home in France. From the date of her arrival and throughout January, February, and March 1941 petitioner had not decided to change her domicile from France to the United States, but, on the contrary, definitely maintained an unchanged intention not to become a resident of this country, since she continued to have the intention of returning to her home in France as soon as conditions beyond her control would permit. The fact that petitioner took certain steps in February 1941 looking towards preexamination to determine in advance her eligibility for entry as a quota immigrant from Canada did show some degree of uncertainty in her state of mind and that she might change her intention, but did not show that she had changed her then continued intention to return to France, for those steps were purely preliminary to a possible change of intention in the future. On the facts herein, we conclude that petitioner did not, at any time material here, change her established residence or domicile from France to the United States, and we hold that respondent erred in determining that she was a resident of the United States at the time the gifts were made. Notwithstanding we have decided on the first question that petitioner was a nonresident of the United States at the time she made the gifts, we are nevertheless of the opinion that the gifts were taxable, upon authority of Pearson v. McGraw, 308 U. S. 313, as contended by respondent. Also, see Van Dyke v. Wisconsin Tax Commission, 235 Wis. 128; 292 N. W. 313; affirmed per curiam, 311 U. S. 605, on authority of Pearson v. McGraw, supra. In the Pearson case, supra, a resident of Oregon, who afterwards died, made a gift in trust, in contemplation of death. The donor owned intangibles which were located in the hands of his agent in Illinois and a few days prior to the gift the agent was instructed to sell such intangibles and purchase Federal reserve notes, which was done. A few days thereafter the donor executed, in Oregon, a trust agreement by which the Federal reserve notes were irrevocably transferred in trust for certain beneficiaries. Shortly after the creation of the trust the trustee used those notes to purchase bonds and other personal property for the trust. All of the property involved in those transactions remained physically in Illinois. Admittedly, under the statutes of Oregon, that state had the power to tax the transfer if the gift consisted of intangibles, because the situs of such property was determined by the domicile of the donor. The donor’s estate contended that it was not liable for the asserted tax on the transfer in trust because the subject matter of the gift consisted of tangible property (Federal reserve notes) the situs of which was in Illinois and consequently immune from taxation by Oregon under the Fourteenth Amendment of the United States Constitution. The Supreme Court of Oregon held that the Fourteenth Amendment prohibited the imposition of the tax, since neither the securities, the cash used to purchase the Federal reserve notes, nor the notes themselves were ever in Oregon, and further, that the notes were tangible property. The Supreme Court of the United States held that the various steps in the series of transactions constituted one integrated and indivisible transaction; that the transaction was a transfer in trust by the decedent of the intangibles which he originally owned located in Illinois and from the proceeds of which the Federal reserve notes were purchased; and that such result was reached notwithstanding each step in the series was real, saying: * * * basically the sale of intangibles, the acquisition of federal reserve notes, and their transfer under the agreement * * * were interdependent. * * * The mere sale of the intangibles and the acquisition of the federal reserve notes had no functional or business significance apart from the * * * transfer. * * * Admittedly decedent had such a purpose [to make a gift in contemplation of death] on the transfer of the notes. To hold that such purpose was not present on the sale of the intangibles would be to isolate one part of the total transaction and to give it significance and meaning utterly inconsistent with the fact that the intangibles were sold for the purpose of acquiring the notes which, in turn, were to be placed under an irrevocable trust. [Brackets supplied.] The Court held that the transfer was subject to the Oregon tax and that it was not necessary to decide whether or not the Federal reserve notes constituted tangible property. The Pearson case, supra, and the instant proceeding are clearly analogous. In both cases the taxing authority asserted a tax on a' transfer of property by gift in trust; shortly prior to the gift the donor owned property, the gift of which would have been clearly subject to tax; the donor, for the sole purpose of making the gift, converted that property into other property of such a character that it was thought that the gift thereof would not be subject to tax; the donor fully intended to-make the gift at the time his (taxable) property was sold and the proceeds converted into other (nontaxable) property; and such conversion served no function or business significance apart from the transfer coupled with the purpose of avoiding a tax thereon; and the actual transfer in trust of what- was thought to be nontaxable property can not be isolated to stand apart from the total integrated transaction. The petitioner endeavors to distinguish the Pearson case, supra, contending that there the donor had a prearranged program which included the trustee’s reconversion of the property transferred in trust into property similar to that originally owned by the donor immediately prior to the gift, while here there was no such prearranged program. In our opinion, there was here such a program, clearly established by the facts and circumstances surrounding the transaction. The petitioner never actively managed her financial affairs and relied wholly on the advice of others (in this country on the advice of Van Marx), but she knew of, discussed, and assented to the plan to sell her various income-producing domestic stocks and bonds and to purchase low interest rate United States Treasury notes for the purpose of avoiding a gift tax on the transfer in trust she intended to make. Her testimony to the effect that she did not “discuss with Van Marx the details of any investments that the trustee would make after the trusts were ere-ated” or her testimony that she did not “discuss with anyone either before or after the trusts were created how long these United States Treasury notes would be held by the trustee” is not sufficiently persuasive to throw a different light on the transaction as it actually took place. The testimony of Yah Marx, petitioner’s principal ad-visor as to the creation of the trusts and the several steps involved in the transfers, does not change the picture either. While he remembered most of the détails surrounding the gifts in trust and while he testified that he did not before the trusts were created discuss “how long” the United States Treasury notes would be held by the trustee after the trusts were created, when it came to the question of whether he discussed with petitioner, before the trusts were created, the matter of the trustee’s investments after the trusts were created, he testified that “I suppose I did” and, further, “I do not remember exactly any more.” On this record, we conclude that petitioner’s conversion of domestic stocks and bonds into United States Treasury notes under a prearranged program or understanding and solely for the purpose of making a tax-exempt gift in trust, was ineffectual for gift tax purposes. The respondent did not err in his determination that the gifts were not exempt from gift tax. Having concluded that petitioner was a nonresident of the United States-at the time the gifts involved were made, it necessarily follows that she was not entitled to the $40,000 specific exemption provided by section 1004 (a) (1) of the Internal Revenue Code, which is granted to residents only. The respondent did not err in not allowing petitioner such specific exemption. Reviewed by the Court. Decision will be entered for the respondent. Leech, J., dissents. SEC. 1000. IMPOSITION OP TAX. (a) Por the calendar year 1940 and each calendar year thereafter a tax, computed as provided in section 1001, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift. * * * (b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; but, in the case of a nonresident not a citizen of the United States, shall apply to a transfer pply if the property is situated within the United States. § 750. Bonds and certificates of indebtedness beneficially owned by nonresident aliens not engaged in business in United States exempt from taxation. Notwithstanding the provisions of sections 745, 747, 752-754 (b), 757, 757b, 757c, 758, 760, 764-766, 769, 771, 773, 774 and 801 of this title, or of any other law, bonds, notes, and certificates of indebtedness of the United States and bonds of the War Finance Corporation shall, while beneficially owned by a nonresident alien individual, or a foreign corporation, partnership or association, not engaged in business in the United States, be exempt both as to principal and interest from any and all taxation imposed on July 9, 1918, or thereafter by the United States, any State, or any of the possessions of the United States, or by any local taxing authority. Sec. 86.0 [Regulations 108 (approved July 30, 1943)]. Scorn on Regulations.— These regulations deal with the gift tax imposed by chapter 4 of the Internal Revenue Code and apply to transfers of property by gift during the calendar year 1940 and thereafter. * * * To the extent that Regulations 79 (1936 Edition), as amended by Treasury decisions, have been made applicable to gift taxes imposed by the Internal Revenue Code, they are hereby superseded. * * V * * * * Sec. 86.2 Transfers Reached. — -(a) In general. — The statute imposes a tax whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible. * * * a gift of a bond, note, or certificate of indebtedness issued by the Federal Government prior to March 1, 1941, if made by a nonresident alien not engaged in business in the United States, is not subject to the tax; * * * * * * * • m * Sec. 86.4 Resident. — * * * A resident is one who has his domicile in the United States (including only the States, the Territories of Alaska and Hawaii, and the District of Columbia) at the time of the gift. (See section 3797 (a) (9).) All others are nonresidents. A person acquires a domicile in a place by living there for even a brief period of time with no definite present intention of moving therefrom. Residence without the requisite intention to remain indefinitely will not suffice to constitute domicile, nor will intention to change domicile effect such change unless accompanied by an actual removal. [The pertinent provisions of Regulations 108, sections 86.3 and 86.4, are similar to those in Regulations 79, articles 3 and 4.]