LOTTINGER, Judge. ■
Plaintiffs-have appealed-from an adverse judgment. In our opinion the trial judge has' adequately resolved the issue presented in this matter in his written reasons for judgment and-we therefore adopt same as our own. They are as follows: . .
“This is a suit by two '(resident) taxpayers seeking to recover from the Collector of Revenue of the State of Louisiana' certain sums paid to the Collector 'under protest in settlement of income tax deficiencies assessed against them for the years 1946 and-1947. The matter.is submitted to the Court on an agreed statement of faqts, the pertinent portion thereof reading:
“The taxes in controversy herein result from adjustments made by the defendant by adding to the petitioners’ incomes gross income' derived from the ■ gains' resulting from a certain sale of intangible propérty sold in the following manner, to-wit:
“Petitioners were the owners of certain intangible securities, being shares of capital stock in various and. sundry 'foreign corporations, which said shares were offered by the plaintiffs for sale through its broker, Beer & Company of 817 Gravier Street, New Orleans, <, Louisiana, in the following manner: ' ’
“Petitioner, F. Lisle Peters, notified a resident broker in Lake Charles, Louisiana, of his desire to sell stocks held for his account by Beer & Company at its offices-in New York -City, New York, the local broker in Lake Charles, Louisiana, being the agent through whom plaintiffs handled all transactions with _ Beer & Company. Upon communication with his agent in Lake Charles the agent would then call Beer & Company’s New Orleans office by long distance telephone and .designate , to-the New Orleans office of Beer & Company the shares which plaintiffs desired to sell and indicate the authority to dispose of said shares- on the New- York, stock exchange. Whereupon the New Orleans office of Beer & Company would notify its New York office to dispose of , the shares under the instructions so received. The shares were-then sold upon the New York stock exchange where théy had been acquired and where the final certificates had always re *894 mained in the possession of Beer & Company as the agent of the plaintiffs. In no instance were the shares of stock so sold ever delivered to the plaintiffs, either in New Orleans, Louisiana, or Lake Charles, Louisiana.
“The applicable statutory provision is Section 8(b) (9) of Act 200 of 1946, amending Act 21 of 1934, and reading:
“ ‘The following items shall not be included in gross income and shall be exempt from taxation under this title:
* # * * * *
“ ‘Capital Gains. — Gains from the sales or exchanges of capital assets located outside the State of Louisiana.’
“It is not disputed that the sales in question were sales of capital assets. It is admitted that the property sold was intangible personal property. It is further admitted that the stock certificates representing this intangible personal property were never physically present in Louisiana.
“Plaintiff apparently concedes he would be liable for the tax if the 1946 amendment had exempted gains from the sales or exchanges of tangible capital assets located outside the State of Louisiana. In other words, he concedes that the state has the right to impose the.tax here in question, but contends that it surrendered this right by the 1946 amendment. Then too, if the amendment had exempted gains from sales of capital assets, the situs of which is outside the State of Louisiana, it is probable that the present controversy would not have arisen. It could not be contended that the property in question had a business or commercial situs outside the State of Louisiana, and under well established jurisprudence the situs was the domicile of the owner in Louisiana. 51 Am.Jur., Taxation, Secs. 463,[1] 468[2] This legal principle was embodied elsewhere in our income tax statute in 1948. LSA-R.S. 47:243(3)[3]
*895 “It appears, therefore, that the sole question for decision is whether or not the property in question was ‘located outside the State of Louisiana,’ and this necessitates a definition of the word ‘located’ as used in the statute. It does not appear that any of the appellate courts of the United States or of the several states have ever found it necessary to define the word ‘located’ in the statutory connection here involved, but it has been defined in other statutory connections.
“In Van Dyke v. Wisconsin Tax Commission, 235 Wis. 128, 292 N.W. 313, 318, the Wisconsin gift tax was involved. The statute provided that no tax should he imposed upon any tangible personal property of a resident donor when such property is located without the state. Van Dyke, a resident of Wisconsin, took bonds to Chicago, received silver dollars for the bonds, and then and there made a donation of the silver dollars to trustees, ’ residents of Wisconsin. The trustees bought other bonds with the silver dollars and took these bonds to Wisconsin. The tax was contested on the ground that the property donated was tangible personal property (silver dollars) that was never within Wisconsin. The Supreme Court of Wisconsin in upholding the tax assumed for purposes of its decision that silver dollars are tangible personal property, although not so holding, and expressing grave doubt on that point, and went on to say:
“ ‘The word “located” as used in this statute clearly refers to situs and not to mere physical presence.’ ”
“In the Wisconsin case the property involved was assumed to be tangible. Here the property involved was admittedly intangible.
“Succession of Rosenthal, 163 La. 673, 112 So. 525, 527, was decided by the -Supreme Court of Louisiana a quarter of a century ago, involving our inheritance tax law. . Decedent owned bonds that were never within, Louisiana. It was contended that the imposition of the tax on the conveyance of these bonds by will violated the due process clause of the Fourteenth Amendment to the . Constitution of the United States. The Court discussed two decisions of the Supreme Court of the United States in which the same ’ attack had been made on state inheritance tax laws, and said:
“ ‘In other words, the court in the Bullen case [Bullen v. State of Wisconsin, 240 U.S. 625, 36 S.Ct. 473, 60 L.Ed. 830] sustained the tax, because the property there, which consisted of a fund embracing bonds, notes, and stock, was intangible personal property, but refused to sustain the tax in the Frick case [Frick v. Commonwealth of Pennsylvania, 268 U.S. 473, 45 S.Ct. 603, 69 L.Ed 1058] because the property there was tangible, or corporeal, personal property. In the first case, it was considered, we'take it, that the rule mobilia sequuntur personam applies, and that the transfer occurred under the laws of the state óf the domicile of the deceased, and in the second case' that the rule did not apply, and that the transfer occurred under the laws of the state where the property is located or employed, without regard to the domicile of the deceased. The Bullen case is also authority for the proposition that bonds are intangible personal property. Hence, under the ruling in the-Bullen case, which has been explained and adhered to in the Frick case, we feel constrained to hold that the transfer by will of the bonds in this case is subject to the inheritance tax, imposed by the act of 1921, as amended by that of 1922.’
“The Rosenthal case has not been overruled or modified. It applies the rule mobilia sequuntur personam to intangible personal property. Under this established jurisprudence the Legislature of Louisiana *896 enacted the statute here under consideration, and this jurisprudence clearly defines the word ‘located’- as used in the statute as referring to situs and not to mere physical presence. The situs of the property here involved was at all times at the domicile of plaintiffs in Louisiana, and the property was never located ■ outside the State of Louisiana. The income tax deficiencies for the years 1946 and 1947 were properly assessed by the Collector.
“For the reasons assigned plaintiffs’ de"mands are'rejected at their cost.”
In addition to the above well reasoned opinion it may be well to point out that one of the ’basic rules of taxation, universal in application, is that an exemption from taxation must''be strictly construed in favor of the state and taxation and against the - taxpayer and exemption. This rule is clearly stated in 84 C.J.S.; Taxation, § 227, as follows: This rule is recognized in Louisiana in the case of State v. Pittsburg Testing Laboratory Corporation, 203 La. 147, 13 So.2d 710.
“The rule, discussed in Statutes § 396, that a tax statute will be construed •-in favqr of the taxpayer,does not apply as to an asserted exemption from taxation. Since, as, considered supra.. § 225, exemptions from taxation are not favored,’ an alleged constitutional or statutory, grant of exemption from taxation will be strictly construed, in favor of, the state and taxation and against the taxpayer and exemption, and in, following ,this, rule of strict construction all doubts will, be resolved .against .the claimed exemption, , Such a .privilege or immunity cannot be made ■out .by inference ,or implication, but must be conferred in terms too clear and plain to be mistaken, and in fact .admitting of no reasonable doubt, and where it exists it should be carefully scrutinized and hot permitted to extend either in scope or duration beyond what the terms of the concession 'clearly require or allow, or so as to create an .absolute and irrevocable exemption unless the language of the statute..clearly ■so requires.”'
Therefore for the reasons herein-above assigned the judgment appealed from is affirmed.
Judgment affirmed.

. “While the maxim ‘mobilia sequuntur personam’ embodies the fundamental principle in respect of the taxable situs of intangible personal propery, it is generally recognized that there may be a ‘business situs’ in a state other than the domicil of the owner or creditor in the case of intangibles used in such other state in the local business of their nonresident owner, which will enable that state to exact a property tax measured by the value of the intangibles used there. •Intangible personal property may acquire a business situs so as to be taxable elsewhere than at the owner’s domicil, although not evidenced in writing.”

. “Other interest, dividends, and profits from sales ■ and exchanges of capital assets consisting of incorporeal property or rights, shall be allocated to the state in which the securities or credits producing such income have their situs, which shall be at the business situs .of such securities or credits, if they have been so used in connection with the taxpayer’s business as to acquire a busi *895 ness situs, or in the absence of such a business situs, shall be at the legal domicile of the taxpayer in the case of an individual or at the commercial domicile of the taxpayer in the case of a corporation.” (Footnotes ours.)