DOMENGEAUX, Judge.
The Secretary of the Department of Revenue and Taxation filed this suit against Leslie Ardoin, Inc., alleging that defendant failed to pay the State $5,095.76 in income taxes for the years 1974 and 1975, under La.R.S. 47:21 et seq., and $4,231.00 in corporate franchise taxes for the years 1973 through 1976, under La.R.S. 47:601 et seq. The parties entered into a stipulation of facts, which we quote as follows:
“1. The defendant, LESLIE AR-DOIN, INC., is an agricultural corporation, formed for such purpose under Loui *1318 siana law,[1] and was operated as such during the period at issue in this case;
2. The defendant has paid Federal Income Tax through the 1976 tax year.
3. The defendant did not pay Louisiana Income Tax for the period January 1, 1974 through December 31, 1975, nor Louisiana Franchise Tax during the period January 1, 1973 through December 31, 1976, claiming an exemption under LSA-R.S. 47:121 and R.S. 47:608(1) from the payment of such taxes.
4. The Court may take judicial notice of LSA-R.S. 47:31; 47:121; 47:601; and 47:608(1); same being the statutes at issue in this controversy.
5. In the event there should be a final judicial decision rendered against the defendant in this matter, defendant agrees to pay the principal sum as claimed by plaintiff to be due for the periods in question, and the plaintiff agrees in such case to waive any penalties to which it may be entitled.
6. This matter is hereby submitted to the Court for adjudication on the basis of these stipulations, the pleadings and the briefs filed by counsel. All exceptions previously filed are referred to the merits.”
After submission of the stipulations and pleadings to the Court, judgment, without accompanying written reasons, was rendered in favor of the defendant. The Department appealed.
The only issue presented on appeal involves the proper construction and interpretation of La.R.S. 47:121 and 47:608, the exemption provisions of the State’s income and corporate franchise tax statutes, respectively.
La.R.S. 47:121, relative to income tax, provides, in pertinent part:
“The following organizations shall be exempt from taxation under this chapter:
(1)Labor, agricultural, or horticultural organizations; . . . ”
La.R.S. 47:608, relative to the corporate franchise tax, provides, in pertinent part:
“The provisions of this Chapter do not apply to corporations organized for the following purposes:
(1) Labor, agricultural, or horticultural corporations; . . ”
It is the Department’s position that in order to come under the exemption provisions, certain requirements must be met. It calls our attention to the State regulation corresponding to La.R.S. 47:121, which provides:
“ARTICLE 121.2. Labor, Agricultural, and Horticultural Organizations.
The organizations contemplated by R.S. 47:121(1) are those which:
(1) have no net income inuring to the benefit of any member;
(2) are educational or instructive in character; and
(3) have as their objects the betterment of the conditions of those engaged in such pursuits, the improvements of the grade of their products, and the development of a higher degree of efficiency in their respective occupations.
Organizations such as parish fairs and like associations of a quasi-public character which are designed to encourage the development of better agricultural and horticultural products through a system of awards, and whose income from gate receipts, entry fees, and donations is used exclusively to meet the necessary expenses of upkeep and operation, are thus exempt. On the other hand, associations which have for their purpose the holding of periodic race meets, the profit from which may inure to the benefit of their stockholders, are not exempt. Similarly, corporations engaged in growing agricultural or horticultural products for profit are not exempt.”
It argues that since Leslie Ardoin, Inc. was organized as a profit making corporation, it cannot qualify for the exemption and must pay income taxes just like any other person engaged in agricultural pursuits for profit.
*1319 With regard to the corporate franchise tax, the Department maintains that since the exemption provision was patterned after that of the income tax statute, the same meaning should be given to the franchise tax exemption. Thus, it maintains that since Leslie Ardoin, Inc. is a corporation engaged in making profits, it is likewise liable for corporate franchise taxes.
On the other hand, defendant argues that the exemptions apply to all agricultural organizations and corporations, regardless of whether they are profit or nonprofit. It claims that the statutes in question are clear and unambiguous, and that it clearly falls within the exemption. Defendant apparently contends that the Department’s regulation changes the meaning of the income tax statute and thus is without force or effect. As such, it cannot influence the corporate franchise tax exemption.
We hold that the exemptions apply only to those agricultural organizations and corporations which are operated on a nonprofit basis.
At the outset we note that, as a basic rule of statutory interpretation, when legislation is patterned after federal law, Louisiana courts may look to federal interpretations in order to ascertain the meaning and application of the statutes in question. Landry and Passman Realty, Inc. v. Beadle, Swartwood, Wall & Associates, Inc., 303 So.2d 761 (La.App. 1st Cir. 1974), writs refused 307 So.2d 631 (La.1975); Cousins v. State Farm Mutual Automobile Insurance Company, 258 So.2d 629 (La.App. 1st Cir. 1972); Beckham v. Hartford Accident & Indemnity Company, 137 So.2d 99 (La.App. 3rd Cir. 1962). We also note that, on at least one occasion, when the Louisiana Supreme Court was faced with interpretating a state income tax provision copied from the federal act, they found that the Louisiana Legislature intended to incorporate into Louisiana law the federal regulations and court decisions surrounding the federal provisions at the time of adoption. Standard Oil Company of New Jersey v. Collector of Revenue, 210 La. 428, 27 So.2d 268 (1946). Finally, we note that in taxing legislation, exemptions must be strictly construed, and clearly, unequivocally, and affirmatively established. Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958); Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477 (1949); Standard Oil Company of Louisiana v. Fontenot, 198 La. 644, 4 So.2d 634 (1941); Succession of Hyams, 199 So.2d 29 (La.App. 4th Cir. 1967), writ refused 250 La. 984, 200 So.2d 667 (1967); Ruston Hospital, Inc. v. Riser, 191 So.2d 665 (La.App. 2nd Cir. 1966); Peters v. Cooper, 90 So.2d 892 (La.App. 1st Cir. 1956).
We now proceed to examine the history of the statutes in question.' The Louisiana income tax law came into existence by virtue of Act No. 21 of 1934. To a large extent, it was patterned after the federal internal revenue code in existence at that time. The provision dealing with exemptions from the tax was found in Section 27 of the Act.[2] A comparison of Section 27 with the current La.R.S. 47:121 reveals that *1320 the provisions of the two are almost identical, there being only minor variations. When Section 27 is compared with the equivalent federal provision in existence *1321 during 1934, § 103 of the Internal Revenue Act of 1932, it is seen that the Louisiana legislation is almost a verbatim copy of the federal act.[3] We therefore are justified in *1322 turning to federal interpretations of the provision.
Treasury regulation Art. 522 [Reg. 77], in effect during 1934, provided the following:
“Art. 522 [Reg. 77]. Labor, agricultural, and horticultural organizations.—The organizations contemplated by section 103(1) as entitled to exemption from income taxation are those which—
(1) Have no net income inuring to the benefit of any member;
(2) Are educational or instructive in character; and
(3) Have as their objects the betterment of the conditions of those engaged in such pursuits, the improvement of the grade of their products, and the development of a higher degree of efficiency in their respective occupations.
Organizations such as county fairs and like associations of a quasi-public character, which are designed to encourage the development of better agricultural and horticultural products through a system of awards, and whose income from gate receipts, entry fees, and donations is used exclusively to meet the necessary expenses of upkeep and operation, are thus exempt. On the other hand, associations which have for their purpose, for example, the holding of periodical race meets, the profits from which may inure to the benefit of their shareholders, are not exempt- Similarly, corporations engaged in growing agricultural or horticultural products for profit are not exempt from tax. [Art. 522, Reg. 77].”
The validity of the federal regulation is not questioned, and we assume that it is a correct interpretation of the federal statute. Under rules of statutory interpretation, it is clear that the Louisiana Legislature intended to exempt only those agricultural organizations which qualified under Treasury regulation Art. 522 [Reg. 77], in effect in 1934. Clearly, defendant does not qualify.
In addition to these rules of statutory interpretation, we find specific support for this view in the Louisiana Supreme Court’s decision in Standard Oil Co. of New Jersey v. Collector of Revenue, supra, which is the legal enantiomorph of the instant controversy. In Standard Oil, the validity of a state regulation was in question. The Collector of Revenue had promulgated a regulation which differed from the corresponding federal regulation. The Court invalidated the state regulation and stated that when the Louisiana Legislature passed a verbatim copy of the federal act, the federal interpretation of the statute was also *1323 adopted. As such, the state regulation could not differ from the federal regulation. In the instant case, the state regulation parallels the federal regulation. It follows from the principles set forth in Standard Oi! that the regulation is a proper interpretation of the statute and should be applied to this case. Defendant is not exempt from the payment of state income tax.
With regard to the corporate franchise tax, an examination of legislative history reveals that prior to a 1958 amendment to the statute, the exemption provision was substantially different from that contained in the income tax statute. Act No. 437 of the 1958 Legislature amended the franchise tax exemption provision in order to parallel the construction of the corresponding income tax exemption provision. We think it apparent that the Legislature intended to grant those corporations exempt from income tax under La.R.S. 47:121 a similar exemption from corporate franchise tax. Thus, the same rule applies to both income tax and corporate franchise tax exemptions. Accordingly, since defendant does not qualify for an exemption from income tax, it does not qualify for an exemption from corporate franchise tax.
For the above reasons the judgment of the District Court is reversed and judgment is hereby rendered ordering defendant to pay the State $5,095.76 for unremitted income tax and $4,231.00 for unremitted corporate franchise tax, together with statutory interest from due date until paid, as provided for by La.R.S. 47:1601. All costs, at trial and on appeal, are to be assessed against defendant-appellee.

REVERSED AND RENDERED.

. Footnote by the Appellate Court. La.R.S. 12:1, et seq., the Business Corporation Law.

. Section 27. Exemptions From Tax on Corporations. — The following organizations shall be exempt from taxation under this Act:
(1) Labor, agricultural, or horticultural organizations;
(2) Mutual savings banks and mutual Building and Loan Associations not having a capital stock represented by shares;
(3) Fraternal beneficiary societies, orders, or associations, (A) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system; and (b) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents;
(4) Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual;
(5) Corporations and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual;
*1320 (6) Business leagues, chambers of commerce, real estate boards, or boards of trade, not organized for profits and no part of the net earnings of which inures to the benefit of any private shareholder or individual;
(7) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes;
(8) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder;
(9) Benevolent life insurance associations of a purely local character, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations; but only if 85 per centum or more of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses;
(10) Farmers’ or other mutual hail, cyclone, casualty, or fire insurance companies or associations (including interinsurers and reciprocal underwriters) the income of which is used or held for the purpose of paying losses or expenses;
(11) Farmers’, fruit growers’, or like associations organized and operated on a cooperative basis (A) for the purpose of marketing the products of members of other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (B) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed 8 per centum per annum on the value of the consideration for which the stock was issued, and if substantially all of such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise, beyond the fixed dividends) is owned by producers who market their products or purchase their supplies and equipment through the association; nor shall exemption be denied any such association because there is accumulated and maintained by it a reserve required by state law or a reasonable reserve for any necessary purpose. Such an association may market the products of nonmembers in an amount the value of which does not exceed the value of the products marketed for members, and may purchase supplies and equipment for non-members in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 per centum of the value of all its purchases;
(12) Corporations organized by an association exempt under the provisions of paragraph 11, or members thereof, for the purpose of financing the ordinary crop operations of such members of other producers, and operated in conjunction with such association. Exemption shall not be denied any such corporation because its capital stock, if the dividend rate of such stock is fixed at not to exceed 8 per centum per annum on the value of the consideration for which the stock was issued, and if substantially all such stock (other than non-voting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the corporation, upon dissolution, or otherwise, beyond the fixed dividends) is owned by such association, or members thereof; nor shall exemption be denied any such corporation because there is accumulated and maintained by it a reserve required by state law or a reasonable reserve for any necessary purpose;
(13) Corporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from the tax imposed by this Act:
(14) Voluntary Employees’ beneficiary association providing for the payment of life, sick, accident or other benefits to the members of such association or their dependents, if (A) no part of their net earnings inures (other than through such payments) to the benefit of any private shareholder or individuals, and (B) 85 per centum or more of the income consists of amounts collected from members for the sole purpose of making such payments and meeting expenses;
(15) Teachers’ retirement fund associations of a purely local character, if (A) no part of their net earnings inures (other than through payment of retirement benefits) to the benefit of any private shareholder or individual, and (B) the income consists solely of amounts received from public taxation, amounts received from assessments upon the teaching salaries of members, and income in respect of investments.

. Sec. 103 [Revenue Act of 1932], The following organizations shall be exempt from taxation under this title—
(1) Labor, agricultural, or horticultural organizations;
(2) Mutual savings banks not having a capital stock represented by shares;
(3) Fraternal beneficiary societies, orders, or associations, (A) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system; and (B) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents;
(4) Domestic building and loan associations substantially all the business of which is confined to making loans to members; and cooperative banks without capital stock organized and operated for mutual purposes and without profit;
(5) Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit; and any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, no part of the net earnings of which inures to the benefit of any private shareholder or individual;
(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual;
(7) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual;
(8) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes;
(9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder;
(10) Benevolent life insurance associations of a purely local character, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations; but only if 85 per centum or more of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses;
(11) Farmers’ or other mutual hail, cyclone, casualty, or fire insurance companies of associations (including interinsurers and reciprocal underwriters) the income of which is used or held for the purpose of paying losses or expenses;
(12) Farmers’, fruit growers’, or like associations organized and operated on a cooperative basis (a) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (b) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 per centum annum, whichever is greater, on the value of the consideration for which the stock was issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise, beyond the fixed dividends) is owned by producers who market their products or purchase their supplies and equipment through the association; nor shall exemption be denied any such association because there is accumulated and maintained by it a reserve required by State law or a reasonable reserve for any necessary purpose. Such an association may market the products of nonmembers in an amount the value of which does not exceed the value of the products marketed for members, and may purchase supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 per centum of the value of all its purchases;
(13) Corporations organized by an association exempt under the provisions of paragraph (12), or members thereof, for the purpose of financing the ordinary crop operations of such members or other producers, and operated in conjunction with such association. Exemption shall not be denied any such corporation because it has capital stock, *1322 if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 per centum per annum, whichever is greater, on the value of the consideration for which the stock was issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the corporation, upon dissolution or otherwise, beyond the fixed dividends) is owned by such association, or members thereof; nor shall exemption be denied any such corporation because there is accumulated and maintained by it a reserve required by State law or a reasonable reserve for any necessary purpose;
(14) Corporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an’organization which itself is exempt from the tax imposed by this title;
(15) Federal land banks, national farm-loan associations, and Federal intermediate credit banks, as provided in the Federal Farm Loan Act, as amended;
(16) Voluntary employees’ beneficiary associations providing for the payment of life, sick, accident, or other benefits to the members of such association or their dependents, if (A) no part of their net earnings inures (other than through such payments) to the benefit of any private shareholder or individual, and (B) 85 per centum or more of the income consists of amounts collected from members for the sole purpose of making such payments and meeting expenses;
(17) Teachers’ retirement fund associations of a purely local character, if (A) no part of their net earnings inures (other than through payment of retirement benefits) to the benefit of any private shareholder or individual, and (B) the income consists solely of amounts received from public taxation, amounts received from assessments upon the teaching salaries of members, and income in respect of investments.