PEARSON, STATE TREASURER OF THE STATE OF OREGON, *v.* McGRAW ET AL., EXECUTORS.

No. 69. Argued November 15, 16, 1939.—Decided December 4, 1939.

---

*Messrs. Willis S. Moore,* Assistant Attorney General of Oregon, and *Dean H. Dickinson,* with whom *Mr. I. H. Van Winkle,* Attorney General, was on the brief, for petitioner.

*Mr. Fletcher Rockwood,* with whom *Mr. Charles E. McCulloch* was on the brief, for respondents.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Hayes, respondents' decedent, died testate in 1936 and was at the time of his death a resident of and domiciled in Oregon. In earlier years when he had resided in the middle west he placed in possession of an Illinois trust company various stocks, bonds and other intangibles, which trust company acted as his agent in collecting principal and income on those securities and in the investment of his funds. When decedent established a domicile in Oregon in 1933, he continued that arrangement with the Illinois trust company, with the result that those securities were always physically present in Illinois, never in Oregon. August 8, 1935, about six months before decedent's death, he directed the Illinois trust company to sell and liquidate sufficient of his bonds held under that

agency arrangement in Illinois to procure a sum which, together with cash balances in his checking account with the trust company, would equal $450,000 and to purchase therewith, as his agent, federal reserve notes of the face amount of $450,000. Between August 8, 1935 and August 12, 1935, the Illinois trust company complied with decedent's directions [1] and prior to August 15, 1935, it purchased $450,000 of federal reserve notes and held them in Illinois as agent for decedent for a few days.

On August 15, 1935, decedent executed in Oregon a trust agreement under which the Illinois trust company was designated as trustee and by which decedent transferred to it as trustee the federal reserve notes. That trust was for the benefit of certain designated relatives and was irrevocable. Under it decedent retained no interest or power whatsoever. The trust company held those federal reserve notes under the trust agreement for about five days. Then from time to time after August 19, 1935, the Illinois trust company used the federal reserve notes, pursuant to the terms of the trust agreement, to purchase bonds and other personal property for the account of the trust.[2]

---

[1] On the sale of bonds in the open market the trust company realized for decedent's account $176,062.01. On August 12, 1935, decedent borrowed from the trust company on a demand note $183,-937.99. On that date decedent had a balance in his checking account with the trust company in excess of $90,000. With the funds so obtained the trust company purchased the $450,000 of federal reserve notes mentioned. Between August 12, 1935, and August 29, 1935, the trust company, on directions of decedent, sold in the open market additional bonds held by it in the agency account and as proceeds of those sales were received by it, it paid off the demand note. That note was entirely paid on August 29, 1935.

[2] None of the property thus acquired by the trustee was ever owned by decedent; the trustee did not purchase or acquire any of the bonds or other assets which at any time constituted a part of the property held by the trustee as agent for decedent under the earlier arrangement.

Admittedly, Oregon had jurisdiction to tax but for the alleged prohibition in the Fourteenth Amendment, for the statute in question imposed a tax on intangibles as well as tangibles which passed by deed or gift made in contemplation of the death of the grantor.[3] But the Supreme Court of Oregon held that that constitutional prohibition was present since neither the securities or cash used to purchase the federal reserve notes nor the notes themselves were ever in Oregon but always in Illinois. Though admitting that intangibles would have been taxable by Oregon under such circumstances, the court in reliance on *Blodgett* v. *Silberman*, 277 U. S. 1, concluded that the federal reserve notes were tangibles. And since decedent had retained them in Illinois for a few days prior to August 15, 1935, without any intention of bringing them to Oregon, they had acquired a so-called business situs in Illinois which constitutionally prevented Oregon from exacting a tax for their transfer.[4] And this conclusion was reached though admittedly the transfer of the notes under the agreement of August 15, 1935, was made in contemplation of death. We granted certiorari

---

[3] "All property within the jurisdiction of the state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass or vest . . . by deed, grant, bargain, sale or gift, or as an advancement or division of his or her estate made in contemplation of the death of the grantor, . . . to any person or persons, . . . in trust or otherwise, . . . shall be and is subject to tax at the rate hereinafter specified in section .10–603, to be paid to the treasurer of the state for the use of the state; . . ." (§ 10–601, O. C. 1930.)

[4] 86 P. 2d 424, 87 P. 2d 766. It seems clear that the Oregon Supreme Court reached this result by reliance on the Fourteenth Amendment and the decisions of this Court thereunder. We do not have, therefore, a case where the state court was merely construing its statute nor a case where it is not clear whether or not it was doing more than that. Cf. *State Tax Commission* v. *Van Cott*, 306 U. S. 511.

because of the importance of the constitutional question involved and of an alleged probable conflict with the principles underlying such decisions as *Curry* v. *McCanless*, 307 U. S. 357.

We disagree with the conclusion of the Supreme Court of Oregon. Oregon having jurisdiction to tax by reason of the statute was not deprived of it by the Federal Constitution.

On the facts of this case we believe that the various steps in the series must be considered as constituting but one integrated and indivisible transaction—a transfer by decedent of intangibles in contemplation of death. And we reach this result though each step in the series was real and though none was camouflaged or concealed. For basically the sale of intangibles, the acquisition of federal reserve notes, and their transfer under the agreement of August 15, 1935, were interdependent. Cf. *Groman* v. *Commissioner of Internal Revenue*, 302 U. S. 82; *Helvering* v. *Bashford*, 302 U. S. 454, 458. From decedent's point of view, completion of the series of steps was necessary for consummation of his program to utilize $450,000 of his estate to provide for certain designated members of his family.[5] Any step short of the final transfer would not have done it. The mere sale of the intangibles and the acquisition of the federal reserve notes had no functional or business significance apart from the August 15, 1935 transfer. That is emphasized here because they created no legal relations and gave rise to no vested rights interfering with decedent's continuing power of disposition. Taken as isolated transactions,

---

[5] This is in accord with the treatment by the Supreme Court of Oregon of "Dr. Hayes' plan," a "plan" which it felt compelled to divide into separate steps by reason of the principles of decisions of this Court dealing with business situs under the Fourteenth Amendment. Cf. *Patterson* v. *Alabama*, 294 U. S. 600.

they have meaning and significance only in relation to the third step, a conclusion made especially evident by the close sequence of events. Hence, it is no answer to say that because the first two steps were not irrevocable but could be recalled, the third step was not a necessary one in the series. For that is as immaterial as is the revocability of any donor's plan to make a gift in contemplation of death at any moment prior to its consummation. Admittedly decedent had such a purpose on the transfer of the notes. To hold that such purpose was not present on the sale of the intangibles would be to isolate one part of the total transaction and to give it significance and meaning utterly inconsistent with the fact that the intangibles were sold for the purpose of acquiring the notes which, in turn, were to be placed under an irrevocable trust. Therefore we need not consider the nature of federal reserve notes, for in that posture of the case their taxability as such and in isolation from the whole transaction is not in issue.

Hence to hold that there is a constitutional barrier to the tax sought to be imposed would be to make a fetish of form. It would make the principles of the decisions of this Court on the constitutional power to tax devoid of any reason or function apart from a ritual of tax avoidance. Cf. *Minnesota Tea Co.* v. *Helvering,* 302 U. S. 609; *Shotwell* v. *Moore,* 129 U. S. 590. Questions of due process are not to be treated "narrowly or pedantically, in slavery to forms or phrases." *Burnet* v. *Wells,* 289 U. S. 670, 677–78.

Accordingly, the transfer was taxable on the authority of *Curry* v. *McCanless, supra,* and related cases. For constitutionally the property was "within the jurisdiction of the state" of Oregon since that jurisdiction is dependent not on the physical location of the property in the state but on control over the owner.

The judgment of the Supreme Court of Oregon is reversed and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE MCREYNOLDS is of the opinion that the judgment below should be affirmed.

MR. JUSTICE STONE:

I concur in the judgment of reversal on the ground that nothing in the Constitution prevents taxation by Oregon of a gift by its citizen of federal reserve notes located elsewhere.

While I do not question that in the circumstances of this case a state could, if so advised, constitutionally tax its citizen for action taken for no other purpose than the evasion of its taxing statutes, no such question is, I think, presented by the record. Discussion of it seems at most to be academic and not to relieve us of the duty of deciding the only federal question which could by any possibility be said to be raised by the record, namely, whether the Constitution precludes taxation of the gift of the banknotes merely because of the physical fact that they are located without the state.

In arriving at the conclusion that the gift of federal reserve notes located outside the state was not taxable, the Supreme Court of Oregon necessarily construed the Oregon statute, which imposes a tax on gifts of "all property within the jurisdiction of the state . . . whether tangible or intangible." The court has said that the banknotes were not within the jurisdiction of the state because their situs was elsewhere, and that the acts of decedent in avoiding the tax by the acquisition of property having an extra-territorial situs were not reached for taxation by state law. If the court did anything more than rule

that the statute, by its own terms, did not extend to the taxation of the gift of the notes because they were located outside the state, it held that the Fourteenth Amendment because of that physical fact withholds, from the state, jurisdiction over the property which the taxing statute asserts.

Petitioner asks us to determine whether that holding is correct. He is entitled to have an answer. We do not rightly avoid giving the answer by saying that, by some statute other than that under review, the state could constitutionally tax its citizen for his action in avoiding the tax, by making the gift in a form of property which is by. hypothesis beyond the taxing power. If the state has by its statute undertaken to lay a tax on gifts of banknotes outside the state without more—and we are without jurisdiction if it has not—no purpose is served by saying to the state that it could have reached the same result by another route, which, under its laws, does not appear to be open to it.

As I am of opinion that there is nothing in the Constitution to compel a state to treat federal reserve notes for tax purposes as chattels were treated in *Frick* v. *Pennsylvania*, 268 U. S. 473, and as no reason has been advanced, even in *Blodgett* v. *Silberman*, 277 U. S. 1, 18, for a different view, cf. *Baldwin* v. *Missouri*, 281 U. S. 586, 591, the judgment should, I think, be reversed upon that ground rather than upon a theory of permissible legislation, of which apparently Oregon's tax laws do not avail.

MR. JUSTICE FRANKFURTER agrees with my views as to Oregon's power to tax these federal reserve notes, but is of opinion that the record sustains the ground taken in the Court's opinion.