## FIRST NATIONAL BANK OF MIAMI, AS ADMINISTRATOR c.t.a. OF ESTATE OF CHARLES L. PEET, v. FIRST TRUST COMPANY OF ST. PAUL, AS TRUSTEE UNDER AGREEMENT DATED OCTOBER 23, 1936.[1]

May 21, 1954.

No. 36,194.

[1]Reported in 64 N. W. (2d) 524.

*Briggs, Gilbert, Morton, Kyle & Macartney* and *Frank N. Graham*, for appellant.

*Morgan, Headley, Raudenbush & Morgan*, for respondent.

*Cole Oehler, amicus curiae.*

THOMAS GALLAGHER, JUSTICE.

Action by First National Bank of Miami, as administrator *c.t.a.* of the estate of Charles L. Peet, deceased, in Palm Beach county, Florida, against First Trust Company of St. Paul, Minnesota, as trustee under a trust *inter vivos* executed by Charles L. Peet in St. Paul on October 23, 1936, to recover $21,264.85, plus interest

from April 25, 1946. This amount was paid by plaintiff from decedent's estate for federal and Florida estate taxes assessed against the transfer of $116,384.73 in securities held in the trust. The trial court ordered judgment against plaintiff, in substance determining that under Minnesota law it could not recover any portion of the tax. This is an appeal from the judgment.

The question presented is whether applicable Florida law requires a pro rata apportionment of federal and Florida estate taxes amongst owners of assets against the transfer of which such taxes are assessed and, if so, whether such law will be applied here where an apportionment of estate taxes cannot be made unless by specific direction of the transferer or testator. We must also determine whether the last will of Charles L. Peet made in Minnesota while he was a resident of Florida by implication contained such a direction and, if so, whether the trust property here would be subject to such a direction.

The facts are as follows: Charles L. Peet died January 25, 1945, at his home in Lantana, Palm Beach county, Florida. Probate proceedings were instituted in the county judge's court there.

On December 30, 1929, while a resident of Minnesota, he had married Georgiana Slade Peet. During the years 1931 to 1935, three children, Charlotte Hill Peet, Charles Lamborn Peet, Jr., and Gertrude Lamborn Peet, were born of this marriage. In 1932 and in 1935 Georgiana Slade Peet gave securities to her husband of the total value of approximately $150,000.

On October 23, 1936, upon the complaint of Georgiana Slade Peet, a decree of divorce was entered in the district court of Ramsey county. Concurrent therewith, Charles L. Peet, as a part of the divorce settlement and in compromise of claims of Georgiana Slade Peet for restoration of her property under M. S. A. 1949, § 518.20, executed an irrevocable *inter vivos* trust, which by its terms provided:

(1) That trustor, Charles L. Peet, transfer to First Trust Company of St. Paul, as trustee, assets worth approximately $150,000

(increased to $161,791 by supplemental instrument dated March 20, 1937).

(2) That the income from such trust be paid to the trustor during his lifetime.

(3) That subsequent to the death of trustor payment of income be made to his three children, as above described, in equal proportions until such time as each reached the age of 30 years, at which time each would receive that portion of the trust assets from which he was then receiving income.

(4) That with reference to assets in excess of $161,791 at the date of trustor's death, certain powers of disposition with reference thereto be reserved in trustor. (This did not become effective because the trust assets were less than $161,791 at the date of trustor's death.)

On July 23, 1938, Charles L. Peet married Narcissa Thorne Peet. Two children, Victoria Peet, born December 16, 1939, and Stephen Peet, born March 29, 1942, were the result of this marriage. On July 20, 1944, the superior court of San Diego county, California, granted to Narcissa Thorne Peet an interlocutory decree of divorce, finally effective, if requested by either party, on July 20, 1945.

On September 15, 1944, in Minnesota, Charles L. Peet made and executed his last will and testament. Therein he described himself as a resident of Lantana, Florida, and provided that, after payment of his lawful debts, funeral expenses, expenses of last sickness, and costs of administration of his estate, there be paid from his estate to each of his children Victoria Peet and Stephen Peet of Coronado, California, the sum of $10,000. No provision was made therein for Narcissa Thorne Peet, who at that time had not yet obtained the final decree in her divorce. (She subsequently elected to take under the Florida statutes, which entitled her to an undivided one-third of the assets of the estate.)

On February 27, 1945, the will was admitted to probate in the county judge's court of Palm Beach county, Florida, and plaintiff appointed administrator c.t.a. The estate was subject to both federal and Florida estate taxes due April 25, 1946. On that date, plaintiff

filed a federal estate tax return showing gross assets of $254,859.34 in the estate and indicating a federal estate tax due in the sum of $34,706.45, which it then paid. This return did not include the assets of the trust.

On July 19, 1948, the United States Treasury Department proposed a deficiency assessment of federal estate taxes in the sum of $58,281.37, primarily as the result of its inclusion in the gross estate of the trust assets at $155,179.61, as of the date of death of Charles L. Peet. This was protested by the administrator, and subsequently a number of conferences were held between it and the bureau of internal revenue. The result was an agreement for the reduction in the value of the trust property to $116,384.73 for federal estate tax purposes.

Subsequent adjustments, because of state taxes and other deductions, resulted in a total federal estate tax liability in the sum of $63,883.42, with interest from April 25, 1946. Plaintiff paid the difference between this amount and the sums previously paid from the assets of the estate. Of the total tax paid, 31.2061 percent was directly attributable to the addition of the $116,384.73 trust assets, so that, exclusive of interest, $19,935.52 of the total tax arose because thereof.

In addition, the administrator was required to pay $4,708.53 in estate taxes to the state of Florida, of which amount 31.2061 percent or $1,329.33 resulted from the addition of the trust assets to the gross estate. It is for these sums, $19,935.52 and $1,329.33, plus interest, that the present action was instituted by the administrator.

No demand has ever been made upon the trustee in the *inter vivos* trust for payment of any portion of either federal or state estate taxes by either the United States Treasury Department or the Florida tax authorities. On November 12, 1952, an order was entered by the judge of the county judge's court at Palm Beach county, Florida, which set forth that the federal and Florida estate taxes paid by plaintiff were apportionable to the trust assets here and that the trustee thereof was indebted to the estate for such sums.

This was made ex parte without notice to or service upon or appearance by defendant.

■ It is clear that, if Minnesota law is to apply as to the federal estate tax, the burden thereof must fall upon the residue of decedent's estate in the Florida probate proceedings rather than upon property transferred under the trust created October 23, 1936, unless decedent's specific direction to the contrary can be established. In re Estate of Gelin, 229 Minn. 516, 40 N. W. (2d) 342.

■ Decedent died January 25, 1945. At that time the Florida apportionment statute (Fla. Stat. 1951, § 734.041) had not been enacted. As subsequently adopted it provided for apportionment of both federal estate and Florida succession taxes amongst the various transferees of a decedent's property in the exact ratio such taxes bore to the value of the property received by each transferee. By its terms its application was limited to "estates of persons dying after January 1, 1948, or to payments of estate taxes or death taxes made, or required to be made" after the effective date of the enactment, June 13, 1949.

In Hagerty v. Hagerty (Fla.) 52 So. (2d) 432, where testator had died June 7, 1946, and all estate and succession taxes had been paid prior to June 13, 1949,[2] the supreme court of Florida decreed apportionment thereof pro rata amongst various testamentary, *inter vivos,* and other transferees, stating therein that (52 So. [2d] 435) :

"* * * The principle of apportionment was recognized by us in Henderson v. Usher, 125 Fla. 709, 170 So. 846, and by the legislature later in Section 734.041, Florida Statutes, 1949, * * *.

"It strikes us that equity justifies if it does not require the adjustment appellants seek; * * *."

By virtue of the foregoing interpretation of Florida law, it is clear that as of the date of decedent's death—January 25, 1945—Florida required apportionment of both federal estate and Florida succession taxes on all property transferred by decedent and within its jurisdiction.

_____

[2]Stipulated by the parties here.

232

■ But it is contended that, since decedent executed his will while a resident of Florida and was domiciled there at the time of his death, he must have contemplated and intended that Florida law should apply to its construction; that this being true, under principles of comity, the Minnesota courts should give effect to the Florida apportionment rule as to the property located here and transferred under the trust agreement by decedent while a resident of Minnesota.

We do not feel that the evidence supports a finding that decedent intended that Florida rather than Minnesota law should govern the transfer of property under the trust, either as to taxation or otherwise. The trust instrument was executed October 23, 1936, long prior to the time decedent became a resident of Florida. It covered disputed property originally owned by his first wife and was the result of a settlement in her divorce proceedings. In decedent's will, made some eight years later, he sets forth that he had intentionally made no provision for his children Charlotte Hill Peet, Charles Lamborn Peet, Jr., and Gertrude Lamborn Peet, beneficiaries under the trust, "as they are otherwise well provided for." These facts make it clear that both decedent and his first wife must have intended and contemplated that Minnesota law would govern the construction and operation of the trust and the impact of taxes to be assessed against the property transferred thereby. Certainly they would not support a conclusion that decedent contemplated or intended that either a Florida statute enacted some 12 years later or principles of Florida common law not theretofore clearly expressed would take precedence over Minnesota law in determining liability for taxes assessed against such property.

■ It is urged that, since the corpus of the *inter vivos* trust consisted of intangible personal property, title to which became effective upon decedent's death, the state of Florida as his domicile was authorized to impose a succession tax on the value of the property transferred thereunder and to *apportion* this tax and the federal estate tax amongst the various transferees of both the probate and nonprobate personal property. In support of this contention appel-

lant cites Central Hanover Bank Co. v. Kelly, 319 U. S. 94, 63 S. Ct. 945, 87 L. ed. 1282; Pearson v. McGraw, 308 U. S. 313, 60 S. Ct. 211, 84 L. ed. 293; Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. ed. 749; quoting from Central Hanover Bank Co. v. Kelly, 319 U. S. 96, 63 S. Ct. 947, 87 L. ed. 1285, as follows:

"* * * the obligations which domicile creates, the * * * necessity of associating intangibles with the person of the owner at his domicile * * *—these are the foundation for the jurisdiction of the domiciliary state to tax."

While the authorities cited recognize the power of a state to assess and collect succession taxes on intangibles of a domiciled decedent which at the time of death are located in some other jurisdiction, none of them support the claim of appellant that such right carries with it an attendant right to apportion such taxes and enforce their collection against transferees of such property resident in foreign jurisdictions adhering to contrary principles as to estate-tax apportionment. Further it is to be noted that in the cases cited (Central Hanover Bank Co. v. Kelly, 319 U. S. 94, 63 S. Ct. 945, 87 L. ed. 1282; Pearson v. McGraw, 308 U. S. 313, 60 S. Ct. 211, 84 L. ed. 293; Blodgett v. Guaranty Trust Co. 114 Conn. 207, 158 A. 245, affirmed, 287 U. S. 509, 53 S. Ct. 244, 77 L. ed. 463) decedent was already domiciled in the taxing state at the time that he created, amended, or otherwise dealt with the trust property, a situation distinct from the instant case.

■ The same question has been presented and determined by the courts of only two states, New York and Massachusetts. In New York, Matter of Gato, 276 App. Div. 651, 97 N. Y. S. (2d) 171, affirmed, 301 N. Y. 653, 93 N. E. (2d) 924, the court gave effect to the Florida apportionment statute with respect to property transferred under an *inter vivos* trust created prior to the enactment of the Florida statute, but it did not discuss at length the question of the applicability of the domiciliary apportionment law to property in a jurisdiction where a different rule was in effect. In Isaacson v. Boston Safe Deposit & Trust Co. 325 Mass. 469, 472, 91 N. E. (2d)

334, 336, 16 A. L. R. (2d) 1277, with reference to this question, the court stated:

"* * * The fact that Smith [testator] was a resident of Maine when he died is of no consequence. His interest in the trust ceased upon his death. The trust fund did not become part of his estate in Maine or anywhere else. The only possible connection between this trust and the State of Maine which we are able to discover is that the Federal government in imposing an estate tax has seen fit to aggregate the probate estate in Maine and the trust fund in Massachusetts into a single 'gross estate.' We cannot see how this circumstance gives power to either State to impose by statutory fiat liabilities upon the fiduciary or the property under the exclusive jurisdiction of the other State. The Federal government could have provided for apportionment of the tax, and did so in certain particulars not reaching the question in this case. * * * But for the most part apportionment was left to the States. * * * the failure of the Congress to provide for complete apportionment gives no extraterritorial effect to State statutes. It seems to us that to apply the Maine statute in this case would be to give to that statute extraterritorial effect contrary to first principles."

After making reference to New York decisions, the Massachusetts court stated (325 Mass. 473, 91 N. E. [2d] 337):

"* * * However, we have seen no case in which the reasons for this doctrine [the application of the apportionment statute of the domiciliary state in foreign jurisdictions] have been discussed or its foundations examined. So far as we have seen it rests upon nothing more satisfactory than repeated assertion. * * * If the doctrine is supposed to be founded upon comity in the settlement of estates by analogy to the common law rule that personal property of a decedent devolves according to the law of his domicil, it goes so far beyond the common law rule that we do not feel authorized to accept it as a permissible application of that rule."

We adopt the reasoning and conclusions of the Massachusetts court in the situation here presented.

The judgment appealed from is affirmed.

Affirmed.

