Millard L. Midonick, S.
This is an appeal pursuant to section 249-x of the Tax Law from a pro forma order dated May 29, 1973 fixing New York estate tax. The appeal concerns the taxability of tangible personal property situated outside the State of New York at the time of the decedent’s death.
The personal property, an emerald and diamond necklace, is the subject of a gift found to be in contemplation of death by the Internal Revenue Service in the Federal estate tax proceeding for this estate. This finding is binding on the taxed estate under New York statutes and rules, especially since the papers submitted by the attorneys for the estate do not contradict or seek to put in issue the fact of contemplation of *369 death. The gift was made in New York and the donee (granddaughter of the decedent) transferred the necklace to Connecticut immediately thereafter. The decedent-donor was a resident domiciliary of New York at the time of the gift and continuously until her death 11 months thereafter.
The question of whether this gift should be included in the decedent’s gross estate for New York estate tax purposes is a novel one and appears to be of first impression in this State. Since the gift was made in contemplation of death, its value, fixed in the sum of $400,000, was so included in the gross estate in the Federal estate tax proceeding under section 2035 of the Internal Revenue Code of 1954 (US Code, tit 26, § 2035). Section 954 of the New York Tax Law is the general conformity section and provides that:
"The New York gross estate of a deceased resident means his federal gross estate as defined in the internal revenue code (whether or not a federal estate tax return is required to be filed) modified as follows:
"(1) Reduced by the amount determined under subsection (a) of section nine hundred fifty-six (relating to real and tangible personal property outside New York State).”
Subdivision (a) of section 956 of the Tax Law excludes from the "federal gross estate * * * tangible personal property having an actual situs outside New York state”. The pro forma order of this court fixing New York estate tax included the value of the necklace, located in Connecticut at the date of death, in the gross estate.
The executors contend that subdivision (a) of section 956 commands literal compliance and that the value of the necklace must be excluded from the estate as having a "situs” outside the State in Connecticut. It is their position that, absent a provision in article 26 of the New York Tax Law similar to subdivision (b) of section 2104 of the Internal Revenue Code (contemplation of death), subdivision (a) of section 956 must be taken literally. Subdivision (b) of section 2104 of the Internal Revenue Code (US Code, tit 26, § 2104, subd [b]) provides that any transfer made in contemplation of death "shall be deemed situated in the United States, if so situated either at the time of the transfer or at the time of the decedent’s death.”
The State Tax Commission contends that because the gift was made within three years prior to decedent’s death, the contemplation of death aspect swept the value of the necklace *370 back into the decedent-donor’s estate. This is in accord with subdivision (a) of section 20.2035-1 of the Federal estate tax regulations (26 CFR 20.2035-1 [a]). If so, since the donor made the gift in contemplation of death, it is urged that the New York situs was still in effect at the time of her death.
It is the ruling of this court that the pro forma order fixing the New York estate tax correctly included the value of the necklace in the gross estate. The situs of the gift at the time of the donor’s death is the donor’s domicile, which is determinative of the issue involved here. It is conceded and found that the gift was made in contemplation of death which dictates that the tax on the value of the gift be made "as though the property given had been a part of the donor’s estate passing at death”. (Milliken v United States, 283 US 15, 22.) Igleheart v Commissioner of Internal Revenue (77 F2d 704, 711) clearly describes the status of a gift in contemplation of death: "property transferred by the decedent in contemplation of death is in the same category as it would have been if the transfer had not been made and the transferred property had continued to be owned by the decedent up to the time of his death.”
As made in contemplation of death, the value of the gift remains in the estate and its disposition is deemed testamentary for tax purposes. Inclusion of the gift is not a constitutional violation. This is clearly the rule for intangible personal property such as that involved in Pearson v McGraw (308 US 313, 318). There the trust property was held taxable by the State of Oregon. The trust was at first revocable and was established inter vivos in Illinois, the corpus being stocks, bonds and cash. Later, by which time the donor settlor had become a domiciliary of Oregon, he executed an instrument making the trust irrevocable, and, most importantly, he was found to have so executed this instrument in contemplation of death.
As for tangible personal property, it was held (where no gift in contemplation of death was involved) that Pennsylvania was constitutionally without power to tax tangible personal property belonging to its own domiciliary at his death, but located in other States. (Frick v Pennsylvania, 268 US 473.) Unlike in Frick, the tangible personal property involved in the proceeding before us was transferred by a New York domiciliary (she was so both at time of transfer and at the time of death) in contemplation of death. That tangible per *371 sonalty therefore never moved from the situs of the New York domiciliary transferror; it is deemed for New York State estate tax purposes to have the same situs that the transferror had as her domicile at the time of her death.
In Matter of Brown (274 NY 10, 17) the Court of Appeals cited the Frick case and stated that "[t]he location of [tangible personal] property at the time the right to impose the tax arises is held to be the determining factor.” In our case, the right to impose the tax arose as at the time of and by reason of the gift made by the decedent, because the gift was made in contemplation of death. Thus, even though the necklace was located outside the State at the time of death, its permanent situs for tax purposes was in New York at the time of the gift which was the time as of which "the right to impose the tax” arose (Matter of Brown, supra). The contemplation of death having existed at the time of the gift, for tax purposes it is as though death itself had occurred at the time of the gift.
Had the decedent’s granddaughter by sale converted the necklace into cash after it was given to her and before the death of the decedent, the proceeds and thus the value of the necklace might be taxable as an intangible in the decedent’s estate at death as a gift in contemplation of death; a fortiori, if the decedent had converted the necklace into cash before making the gift. Had the decedent permanently lent her necklace to her granddaughter in Connecticut or had she permanently stored it herself in Connecticut, presumably (if Frick, supra, will continue to be valid) New York would not have the power to levy an estate tax on the necklace at the time of the decedent’s death because the right to tax would arise at death at which time the situs of the necklace would be outside the jurisdiction of New York. Under such hypothetical situations, the decedent herself, as in Frick, retained ownership of the property and the transfer of ownership of the property would have occurred at her death when its permanent situs was outside of New York. Thus, such transfer might be beyond the power of New York to levy upon it as an estate asset. However, in our case, the decedent’s ownership of the necklace terminated at the time she made the gift and New York had the power to impose an estate tax on the transfer by the decedent as of the time of the gift if such gift was made in contemplation of death.
On the other hand, while the foregoing argument is the position of this court, the court recognizes that the Frick *372 doctrine raises a serious question of whether New York has the power to tax personalty located outside its borders at death, even if such personalty was the subject of a gift in contemplation of death. A liberal reading of Frick would lead to the conclusion that a State cannot tax any personalty located outside its borders no matter how or for what reason it was removed permanently from New York. However, the effect of a truly liberal application of the Frick doctrine would overrule the cases that followed after Frick, which cases allowed a State to tax property temporarily without its borders (e.g., Johnson Oil Co. v Oklahoma, 290 US 158, involving rolling stock belonging to an oil corporation. That court held that the State in which the owner was domiciled remained the permanent situs of the property notwithstanding its occasional excursions to foreign parts.) Therefore, an interpretation of the Frick case as limiting New York’s power to tax, should not be applied in the case at bar. Professor Louis Lusky of Columbia University School of Law, a leading constitutional law scholar, seems to question the persistence, and more so the extension, of the Frick doctrine. Under his chapter VII entitled "The 1937 Crossroads” (Lusky, By What Right?, Michie Co., 1975, pp 102-103) he writes:
"For half a century, more or less, the Court had increasingly become the protector of free enterprise. It had limited the Federal Government’s power over manufacturing, mining, farming, and labor relations, and had limited the power of Federal and state governments alike to establish terms for the sale of goods and services. [Citing cases.] As a related sideline, it had curbed taxation that impaired business freedom or interfered with transmission of accumulated wealth (typically the fruit of free business). [Citing, e.g., Frick v Pennsylvania, 268 US 473”.]
* * *
"There had been a tentative and limited easing of constitutional shackles as early as 1934. [Citing Blaisdill and Nebbia.] Then in the spring of 1937, the restraints began rapidly to fall away. [Citing constitutionality of minimum wage laws, the National Labor Relations Act and the Federal Social Security Act.]
"For the next several years, the Court’s main constitutional business consisted of clearing away vestiges of decayed doctrine.”
In Pearson v McGraw (308 US 313, 318, supra) seven *373 Justices of the Supreme Court concurred in the view that “constitutionally the property was 'within the jurisdiction of the state’ of Oregon since that jurisdiction is dependent not on the physical location of the property in the state but on control over the owner.” Contemplation of death was found, as here, but intangible property was the subject of the business situs outside the taxing State. Only Mr. Justice McReynolds dissented, and only Mr. Justice Stone, concurring with the majority, mentioned the aspect of tangible personal property when he stated (p 320): “As I am of [the] opinion that there is nothing in the Constitution to compel a state to treat federal reserve notes for tax purposes as chattels were treated in Frick v. Pennsylvania, 268 U.S. 473 * * * the judgment should, I think, be reversed upon that ground rather than upon a theory of permissible legislation”. It seems, therefore, that Mr. Justice Douglas, speaking for seven Justices, would be implied dictum, perhaps even by the holding, overrule Frick implication insofar as Frick distinguishes tangible from intangible personal property, since “control” of the domiciliary owner who contemplates death does not distinguish between the owner’s tangible chattels and the owner’s intangible notes.
For these reasons of “decayed doctrine”, this court has limited Frick to the facts involved in that case. It seems to this court if the Federal Government has the power to tax tangible personal property located in this country at the time of the gift but located without this country, at the time of death, if given in contemplation of death Internal Revenue Code, § 2104, subd [b]), then this State has the power to tax the necklace. Moreover, if Professor Lusky is correct, it is to be anticipated that the next Supreme Court involvement in this area will find tangible personal property treated like intangibles as having a situs at the domicile of the owner. Such a ruling would avoid conflicting claims by two States, and in other cases, the failure of the nondomiciliary State even to know of the death of the decedent.
Turning now from consideration of power to New York’s legislative intent, this court also recognizes that the absence of an estate tax provision in the New York Tax Law parallel to subdivision (b) of section 2104 of the Internal Revenue Code arguably may indicate the New York Legislature’s intent not to tax gifts of out-of-State tangible personalty made in contemplation of death, if the tangible property is removed from New *374 York before death but after the date of the gift. If the legislative intention is to tax such property at death, it should be made clearer by an express statutory provision including such personalty if located in New York at the time of gift. To remain ambiguous as to this problem creates unnecessary questions. It should be noted that legislative action in this regard may have wider impact if this State adopts the provisions of the Federal Tax Reform Act of 1976 (90 US Stat 1520). Under that statute, all gifts made after December 31, 1976 in excess of $3,000 and made in any calendar year by one person to another become added to the estate of the donor and subject to a Federal estate tax. (Cf. Kess, Guide to New Gift Tax Rules, NYLJ, Aug. 4, 1977, p 1, col 1.) Assuming such conforming legislation by New York, all such gifts of intangibles will surely become taxable in estates; perhaps such gifts of tangible personalty will become taxable if the decision herein is correct and if clearly so included by law; such gifts of out-of-State real property would continue, nevertheless, not to be subject to New York’s power to tax.
While the doctrines here analyzed support the power of this State to tax, it does not follow that such power is exercised wisely for the public purse or fairly for our citizens. Our Legislature is considering thorough revision of estate tax law especially by reason of the revolutionary Federal Tax Reform Act of 1976. One major improvement which will ease New York State domiciliaries’ tax burden and very probably increase State tax revenues besides, would be to adopt the "sop-up” estate tax principle used by Florida. The Florida estate tax is calculated to be equivalent to the credit given under the Federal estate tax formula. In large estates, this amounts to a maximum of about 16%, compared with New York State’s maximum of about 21%. The result in many citizens’ planning is to shift domicile at retirement or semiretirement to such a State as Florida. The estate tax saving is only 5% for large estates, and for moderate estates the saving declines to 1 or 2%. But misconception makes it appear more disadvantageous to the mobile taxpayer. If fewer New York citizens were to shift domicile, New York could levy considerably more of the 16% maximum estate tax which costs the taxpayer nothing since the Federal estate tax is reduced by a credit in an equivalent amount. The result should be fewer shifts of domicile away from New York and more revenues for New York at lower rates of taxation.
*375 The appeal from the pro forma order fixing New York estate tax is denied.