IN the MATTER OF the ESTATE OF Elsina N. PARSONS, Deceased: Theodore Whittier PARSONS, Donald Gordon Parsons, David Leonard Parsons, Virginia Elizabeth Oberg (nee Parsons), Katherine Bosier Parsons and Wisconsin Valley Trust Company, Petitioners-Appellants-Petitioners,

v.

WISCONSIN DEPARTMENT OF REVENUE, Respondent.

Supreme Court

*No. 83–1649. Argued January 2, 1985.—Filed January 31, 1985.*

(Also reported in 361 N.W.2d 687.)

For the petitioners-appellants-petitioners there were joint briefs by *Raleigh Woolf,* Milwaukee, and *John F. Michler* and *Ruder, Ware, Michler & Forester, S.C.,* Wausau, and oral argument by *Mr. Woolf.*

For the respondent the cause was argued by *John J. Glinski,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM A. BABLITCH, J.  The petitioners, five beneficiaries under a trust, seek review of a decision which affirmed the Wisconsin Department of Revenue's imposition of inheritance taxes on the distribution of the trust corpus following the death of Elsina Parsons, the trust's settlor.  The petitioners contend that Wis-

consin has no jurisdiction over the trust because the major portion of the trust assets were transferred when the trust was established in Illinois, not at the time of Parsons' death. They also contend that Wisconsin has no constitutional power to levy inheritance tax on their remainder interests in Parsons' irrevocable trust because the situs of the trust is not in Wisconsin and the trust has no nexus with this state. We conclude that the state's power to levy inheritance taxes is based solely upon the domicile of the settlor, and depends neither upon the situs of the trust, nor upon the trust's nexus with the state. Therefore, we hold that there is no constitutional impediment to the levy of inheritance taxes by the state of Wisconsin on the transfer of remainder interests to beneficiaries of Parsons' irrevocable trust because Parsons was a domiciliary of the state of Wisconsin at the time of her death, which was the taxable transfer. Accordingly, we affirm the court of appeals.

On May 20, 1964, Elsina Parsons (Parsons), then a resident of Evanston, Illinois, executed an irrevocable trust agreement. She appointed the First National Bank and Trust Company of Evanston, Illinois as trustee. She funded the trust principal by paying $10.00 to the trustee and executing an assignment to the trustee of all the cash and securities ($489,340) distributable to her from her husband's estate.

The trust instrument provided that the trustee had total control over the investment of the trust assets and the management of the trust principal. It specified that Parsons did not retain any right to revoke the trust, nor any right to change the beneficiaries named by the trust agreement. Parsons reserved a life interest in the income of the trust, and the right to withdraw up to $100,000 of the trust corpus at her sole discretion. Parsons was to receive distributions from the trust's corpus if the trust income fell below $12,000 in one year

in order to ensure that she received at least $12,000 per year from the trust. In addition, the trustee was authorized to make distributions to Parsons from the trust's corpus for her "welfare, comfort, care and medical attention, or for any other purpose the trustee deemed to be in her best interest, without regard to any obligation to preserve the trust for the beneficiaries." Parsons also retained the power to remove the trustee and to appoint another corporate trustee. The trust instrument provided that at her death, the trust principal was to be distributed to the five grandchildren of Parsons' husband. The grandchildren were residents of Illinois at the time the trust was created and remain Illinois residents.

Parsons moved to Wisconsin in 1967 and remained a Wisconsin resident until her death in 1978. The "paper evidences" of the intangible assets of the trust were apparently kept in Illinois, where they were administered by the Illinois trustee. United States fiduciary income tax returns for an Illinois trust were filed by the trustee for all of the years of the trust's existence, and Illinois fiduciary tax returns were also filed. Illinois personal property taxes were paid on the trust.

Parsons presumably received trust income in Wisconsin, and made withdrawals of trust principal, amounting to $23,425 of the $100,000 she had the power to withdraw. She had an unexercised power at the time of her death to withdraw an additional $76,575 and to remove and replace the trustee.

Parsons died on October 3, 1978, and the trust principal was distributed to the five individual beneficiaries who are the petitioners in this review. On May 1, 1981, the Wisconsin Department of Revenue issued a "Certificate Determining Inheritance and Estate Tax," assessing an inheritance tax of $12,766.37 against each of the trust's beneficiaries. On or about August 18, 1981, the beneficiaries and Wisconsin Valley Trust Company, the

personal representative of Parsons' will, filed a petition in Price county circuit court for redetermination of the taxes due. The petitioners conceded that the portion of the $100,000 principal Parsons had the power to withdraw but did not withdraw ($76,575) was taxable, but contended that the balance of the trust assets were transferred when the trust was created.

On July 11, 1983, the circuit court affirmed the department of revenue's determination of taxes. Shortly thereafter, the remaindermen and personal representative appealed to the court of appeals arguing that (1) Wisconsin had no jurisdiction over the trust or its intangible assets because the major portion of the assets were transferred when the trust was established in Illinois, not at the time of Parsons' death; and (2) Wisconsin had no constitutional power to tax the distributions because it had no jurisdiction over the trust or its assets.

In a published opinion, the court of appeals rejected each of these arguments. *In Matter of Estate of Parsons*, 119 Wis. 2d 340, 350 N.W.2d 722 (Ct. App. 1984). Relying on *Estate of Perry*, 35 Wis. 2d 412, 151 N.W.2d 58 (1967), the court of appeals held that the transfer of all trust assets occurred at the time of Parsons' death, not at the time of the trust's creation. The court concluded that *Perry* applied in this case even though the trust in *Perry* was revocable because the beneficiaries in the instant case, as in *Perry*, only received an economic benefit at the time of the grantor's death, and therefore, this was the taxable transfer. *Parsons* at 342–43. The court of appeals also concluded that Wisconsin had jurisdiction to tax the distributions of the trust's corpus because Parsons was domiciled in Wisconsin for ten years while the trust existed until her death and had retained considerable rights and powers over distributions of the trust corpus. *Id.* at 345.

Subsequently, the beneficiaries and personal representative filed a petition for review, which was granted by this court. The issues presented for review are:

■

(1) Whether the transfer at the death of Parsons, a resident of Wisconsin, of the assets of an irrevocable trust, created and funded at the time Parsons was a nonresident, is subject to Wisconsin inheritance taxation under sec. 72.12(4)(b)1, Stats. 1977? We hold that pursuant to sec. 72.12(4)(b)1, the distribution of the assets of the trust created when Parsons was a nonresident, and maintained in another state, was a taxable transfer at the time of her death. Section 72.12(4)(b)1 explicitly taxes property transfers taking effect at or after the transferor's death, including transfers where the transferor retained for life the possession or enjoyment of, or the right to the income from the property.

(2) Whether under the fourteenth amendment to the U.S. Constitution, Wisconsin may levy an inheritance tax on the transfer, at the death of a Wisconsin resident, of the remainder interests in an irrevocable trust a grantor established in Illinois, where the trust was administered in Illinois and where the trust corpus consisted of intangible property? We hold that the state's power to levy inheritance tax is based solely upon the domicile of the settlor, and does not depend upon the situs of the trust or the trust's nexus with this state. Therefore, Wisconsin may constitutionally levy inheritance tax because Parsons was a domiciliary of the state at the time of her death.

The petitioners concede that the portion of the $100,000 principal Parsons had the power to withdraw but did not withdraw ($76,575) is properly subject to Wisconsin inheritance tax. They contend, however, that the balance of the trust assets were transferred at the time the trust was created, and are therefore not sub-

ject to inheritance tax.[1] We conclude, as did the court of appeals, that this question was resolved against the petitioners by *Perry*. *Parsons* at 342.

In *Perry,* this court held that the distribution of the assets of a revocable trust created when the grantor was a nonresident and maintained in another state was a transfer which became taxable under sec. 72.01(3)(b)1, Stats. (which became sec. 72.12(4)(b)1, 1977), at the time of the grantor's death. *Id.* at 417. Section 72.12(4)(b)1, 1977, like its predecessor, taxes property transfers that take effect at or after the transferor's death and include transfers where the transferor retained for life the possession or enjoyment of, or the right to income from, the property.[2]

While the petitioners argue that *Perry* is distinguishable because the trust in issue in that case was revocable, we find this distinction to be insignificant. This court's reasoning in *Perry* centered on the time the beneficiaries

_____

[1] The beneficiaries did not directly challenge Wisconsin's statutory authority to levy an inheritance tax in their briefs but did so at oral argument, contending that the transfer was actually a gift. In addition, the beneficiaries nexus argument, that the transfer of assets actually took place in Illinois at the time of the trust's creation, does raise a statutory argument that sec. 72.12(4)(b)1, Stats. 1977, does not permit taxation in this case.

[2] "72.12 **Transfers liable.** A tax is imposed upon any transfer to any distributee in the following cases:

". . . .

"(4) Transfer in contemplation of death or to take effect after death.

". . . .

"(b) Transfer to take effect after death. When a transfer is made without adequate and full consideration in money or money's worth and is intended to take effect in possession or enjoyment at or after the death of the transferor, including any transfer where the transferor has retained for his life or for any period not ending before his death:

"1. The possession or enjoyment of, or the right to the income from, or to economic benefit from, the property; or. . . ."

received the economic benefit, which was at the grantor's death, to determine the time of transfer, not upon the grantor's retained power to revoke the trust. *Id.* at 417. This court, *quoting Estate of Ogden,* 209 Wis. 162, 167, 244 N.W. 571 (1932) stated:

" 'In the decisions interpreting statutes of this character the general holding is that where the right to possession and enjoyment is suspended until the donor's death the interest does not reach the donee until that event occurs, and that the succession to that interest is taxable. . . . In order to escape the tax in this state the transfer must pass property from the transferor with all the attributes of ownership independently of his death.' "

On page 169, this court in *Ogden, supra,* stated:

" 'The tax here sought to be enforced is a tax upon succession to the possession and enjoyment of property. The gift was not completed and the use and enjoyment never passed to the donee until the death of the donor, and so long as this privilege could not be exercised by the donee it is subject to the tax.' " *Perry* at 416–17.

This court concluded that "the beneficiaries of the trust received the interest of the donor only at the death of the donor. . . ." *Id.* at 417, for only then " 'was there a shifting of economic use and benefit of the property to the donee.' " *Id.* (*quoting, Ogden* at 167).

Similarly, the beneficiaries in the case at bar only received the trust assets at the time of the transfer, which occurred at Parsons' death. They had no right to the use and enjoyment of the trust assets until her death. We agree with the court of appeals that "[u]nder the trust agreement, it was possible for her to have consumed the entire trust corpus through distributions for her welfare, comfort, support, care, or any purpose deemed to be in her best interests by the trustee she chose." *Parsons* at 343.

Accordingly, we hold that the beneficiaries did not receive an economic benefit at the time the trust was created. They received an economic benefit only at the time of Parsons' death. Therefore, under *Perry*, the distribution of the trust corpus following Parsons' death was the taxable transfer. We conclude that the beneficiaries are subject to Wisconsin inheritance taxation under sec. 72.12(4) (b) 1, Stats. 1977.

We turn now to the second issue raised by the petitioners, namely the constitutionality of Wisconsin's inheritance tax under the circumstances of this case. The petitioners argue that Wisconsin's levy of inheritance taxes on their remainder interests in Parsons' irrevocable trust violates their fourteenth amendment right[3] because the situs of the trust is not in Wisconsin and the trust has no nexus with this state. We can find no constitutional support for petitioner's inclusion of either a nexus or situs requirement as a constitutional prerequisite for inheritance taxation. In fact, we find well-settled United States Supreme Court law which reveals just the opposite: the state's power to levy inheritance taxes is based solely upon the domicile of the settlor, and depends neither upon the situs of the trust, nor upon the trust's nexus with the state.

In *Curry v. McCanless*, 307 U.S. 357 (1939), the decedent, while domiciled in Tennessee, established a trust in Alabama which consisted of stocks and bonds. The trust was administered in Alabama and the "paper evidences" of the intangible property held by the trustee were located in Alabama. *Id.* at 360–61. The decedent

---

[3] "ARTICLE XIV.

"Section 1. . . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

reserved the right to receive net income from the trust for life, the power to remove and replace the trustee, the power to control investment and the power to dispose of the trust assets by will. *Id.* at 360.

The executors of the decedent's will brought a declaratory judgment for determination of what portions of the estate were taxable in Tennessee and what portions were taxable in Alabama. The United States Supreme Court held that either state, or both states could tax the estate. The Court stated:

> "From the beginning of our constitutional system control over the person at the place of his domicile and his duty there, common to all citizens, to contribute to the support of government have been deemed to afford an adequate constitutional basis for imposing on him a tax on the use and enjoyment of rights in intangibles measured by their value. Until this moment that jurisdiction has not been thought to depend on any factor other than the domicile of the owner within the taxing state, or to compel the attribution to intangibles of a physical presence within its territory, as though they were chattels, in order to support the tax.
>
> ". . . .
>
> "[I]t is undeniable that the state of domicile is not deprived, by the taxpayer's activities elsewhere, of its constitutional jurisdiction to tax, and consequently that there are many circumstances in which more than one state may have jurisdiction to impose a tax and measure it by some or all of the taxpayer's intangibles." *Id.* at 366–68.

The *Curry* Court explicitly rejected the argument that a situs of the intangible trust corpus could be identified, and that non-situs states could be prohibited from taxing the interests of the trust. The Court stated:

> "We find it impossible to say that taxation of intangibles can be reduced in every case to the mere mechanical operation of locating at a single place, and there taxing, every legal interest growing out of all the complex legal relationships which may be entered into

between persons. . . . We have recently declined to press to a logical extreme the doctrine that the Fourteenth Amendment may be invoked to compel the taxation of intangibles by only a single state by attributing to them a situs within that state. We think it cannot be pressed so far here." *Id.* at 373. (Footnote omitted).

In *Pearson v. McGraw,* 308 U.S. 313 (1939), the decedent, while domiciled in the "middle west", set up an Illinois trust which was made up of securities. The decedent moved to Oregon, leaving the securities in Illinois. Six months before the decedent's death in Oregon, the decedent sold some of his bonds held by the Illinois trust company, bought federal reserve notes, and transferred the notes to a newly-created irrevocable trust administered by the Illinois trust company. The decedent executed the second trust in Oregon, and retained no power over or interest in the trust. The Supreme Court of Oregon held that the State of Oregon had no power to tax the trust interests at the death of the settlor because the trust had been funded by tangible property, federal reserve notes, which were not physically located in the state. *Id.* at 316.

The United States Supreme Court reversed this decision. The Court disregarded the tangible nature of the federal reserve notes because the trust funded with the notes had used the notes to purchase intangible assets for the trust. The Court viewed the entire transaction as a transfer of intangibles by the decedent in contemplation of death. The Court held that, under *Curry* the transfer was taxable in Oregon, the decedent's domicile. *Id.* at 318. The Court stated: "Constitutionally the property was 'within the jurisdiction of the state of Oregon' . . . [because] jurisdiction is dependent not on the physical location of the property in the state but on control over the owner." *Id.*

The United States Supreme Court reached the same conclusion in *Central Hanover Bank Co. v. Kelly,* 319

U.S. 94 (1943). In that case, the decedent was at all times a resident of New Jersey. He established an irrevocable trust in New York, over which he retained no control. However, under the trust agreement he was to receive the net income from the trust for life. The securities which formed the trust corpus remained in New York and were administered by a New York trustee. *Id.* at 95. The New Jersey court upheld the assessment of a tax on the transfer of the contingent remainders at the settlor's death in New Jersey. The Court affirmed, relying on *Curry* and *Pearson.*

The *Central Hanover* Court made it clear that the state's power to levy death taxes is based upon the domicile of the settlor alone, and does not depend upon the terms of the trust agreement or upon the location of the intangible property of the trust. The Court stated:

> *"It is much too late to contend that domicile alone is insufficient to give the domiciliary state the constitutional power to tax a transfer of intangibles where the owner, though domiciled within the state, keeps the paper evidences of the intangibles outside its boundaries.* . . . The command of the state over the owner, the obligations which domicile creates, the practical necessity of associating intangibles with the person of the owner at his domicile since they represent only rights which he may enforce against others—those are the foundation for the jurisdiction of the domiciliary state to tax. . . . The execution of the present trust agreement in New York, the circumstance that the remaindermen as well as the trustee were nonresidents of the taxing state are quite immaterial. *Domicile is the single controlling consideration in this situation.* . . ." *Id.* at 96–97. (Emphasis added).

*Accord Estate of Elsman,* 74 Cal. App. 3d 721, 141 Cal. Reptr. 657 (1977) ; *Bunting v. Sullivan,* 206 A.2d 471 (Conn. 1965) (where the grantor retained no powers over the trust).

We conclude that the transfer of the remainder interests in Parsons' trust is constitutionally taxable by

the state of Wisconsin because Parsons was a domiciliary of this state at the time of her death. The decedent's domicile is the controlling fact. *Curry, Pearson* and *Central Hanover* make clear that there is no nexus requirement between the trust and the taxing state, nor a situs requirement for the intangible trust assets. We therefore affirm the court of appeals and conclude, as it did that "Wisconsin certainly has jurisdiction to tax the Parsons trust distributions." *Parsons* at 345.

*By the Court.*—The opinion of the court of appeals is affirmed.