ESTATE OF WARREN J. SHANNON, DECEASED, OVEIDA E. SHANNON, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Shannon v. Commissioner
Docket No. 34918-87
United States Tax Court
T.C. Memo 1990-614; 1990 Tax Ct. Memo LEXIS 687; 60 T.C.M. (CCH) 1361; T.C.M. (RIA) 90614; December 5, 1990, Filed *687 Decision will be entered under Rule 155. Richard C. Schmoker and Charles T. Parks, Jr., for the petitioner. Ellen T. Friberg, for the respondent. CLAPP, Judge. CLAPP
*1975 MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioner's estate tax of $ 43,677.21. After concessions by respondent, the issues are (1) whether, under the Minnesota apportionment statute, the Federal and State *688 estate taxes are to be apportioned among bequests and devises, which gave rise to the tax, or paid entirely out of the residue which qualifies for the marital deduction; and (2) whether extrinsic evidence is admissible to determine the testator's intent. FINDINGS OF FACT Some of the facts are stipulated and are so found. All section references are to the Internal Revenue Code as in effect at the date of decedent's death. All Rule references are to the Tax Court Rules of Practice and Procedure. Warren J. Shannon (decedent) died November 21, 1983. Decedent's widow, Oveida E. Shannon (Shannon), is the executrix of his estate. Shannon resided in Blue Earth, Minnesota when the petition was filed. Decedent's will was admitted to probate and contained the following article: I. I direct that my representative hereinafter named pay all my just debts, funeral expenses, expenses of last illness, expenses of administration, inheritance and estate taxes as soon after my death as may be convenient. In article II of the will, decedent bequeathed $ 500 to the Society for the Propagation of the Faith. Article III contained a devise of a life estate in farmland to Shannon and *689 the remainder interest therein to decedent's and Shannon's three children. Article IV bequeathed and devised the residue of the estate to Shannon. Article V provided that if Shannon did not survive decedent by more than 6 months (she did), the residue was to be divided equally among the three children. These provisions constitute the substance of decedent's will. OPINION The parties are in agreement with regard to the operation of the Minnesota apportionment statute, if it applies and has not been overridden by decedent's will. The difference in the positions of the parties lies in whether Article I of decedent's will "directs a method of apportionment of tax different from the method described" in the Minnesota apportionment statute. Petitioner argues that Article I does not provide a direction against apportionment and that the apportionment statute should be applied with the result that all of the estate tax shall be apportioned to the property devised under Article III. Article II is fully deductible as a charitable deduction and Article IV qualifies for the marital deduction. Respondent, on the other hand, argues that Article I of decedent's will directs a different *690 method of apportionment; namely, that the estate tax is to be paid out of the residue (Article IV). Since the parties agree that the entire residue under Article IV qualifies for the marital deduction under section 2056(a), the apportionment of an estate tax to the residue results in a reduced marital deduction and therefore a higher estate tax, which is the subject of the controversy herein. Thus, the parties are in full agreement as to all aspects of this case except the significance of Article I of decedent's will directing his representatives to pay "estate taxes as soon after my death as may be convenient." The relevant portions of Minnesota's apportionment statute are as follows: 524.3-916 Apportionment of estate taxes (a) For purposes of this section: (1) "estate" means the gross estate of a decedent as determined for the purpose of federal estate tax and the estate tax payable to this state; * * * (3) "person interested in the estate" means any person entitled to receive, or who has received, from a decedent or by reason of the death of a decedent any property or interest therein included in the decedent's estate. It includes a personal representative, conservator, *691 and trustee: * * * (5) "tax" means the federal estate tax and the state estate tax determined by the commissioner of revenue pursuant to chapter 291 and interest and penalties imposed in addition to the tax; * * * (b) Unless the will or other written instrument otherwise provides, the tax shall be apportioned among all persons interested in the estate. The apportionment is to be made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax are to be used for that purpose. If the decedent's will or other written instrument directs a method of apportionment of tax different from the method described in this code, the method described in the will or other written instrument controls. * * * (e)(1) In making an apportionment, allowances shall be made for any exemptions granted, any classification made of persons interested in the estate and for any deductions and credits allowed by the law imposing the tax. *1976 (2) Any exemption or deduction allowed by reason of the relationship of any person to the decedent or *692 by reason of the purposes of the gift inures to the benefit of the person bearing such relationship or receiving the gift; but if an interest is subject to a prior present interest which is not allowable as a deduction, the tax apportionable against the present interest shall be paid from principal. * * * (5) To the extent that property passing to or in trust for a surviving spouse or any charitable, public or similar gift or devisee is not an allowable deduction for purposes of the tax solely by reason of an estate tax imposed upon and deductible from the property, the property is not included in the computation provided for in subsection (b) hereof, and to that extent no apportionment is made against the property. The sentence immediately preceding does not apply to any case if the result would be to deprive the estate of a deduction otherwise allowable under section 2053(d) of the Internal Revenue Code of 1954, as amended, of the United States, relating to deduction for state death taxes on transfers for public, charitable, or religious uses. [Footnote omitted.] We have found no opinions from the Supreme Court of Minnesota or the Court of Appeals *693 of Minnesota, and have been directed to none, that deal with this specific issue. Neither of the parties have pointed out, and our research does not reveal, any method under Minnesota law by which we could certify this question to the Supreme Court of Minnesota for guidance. Since State law determines where the burden of estate tax falls, Riggs v. Del Drago, 317 U.S. 95, 97-98 (1942), we must attempt to determine what the Supreme Court of Minnesota might decide if presented with this issue. We initially look to the Minnesota statute that provides a method for apportioning Federal estate tax among the persons who receive property from an estate, which property has given rise to the estate tax. The statute clearly would not apportion any estate tax to any property which was the subject of a charitable bequest or devise (Article II of decedent's will) since the value of that property would be deducted from the gross estate, and it would not result in any increase in estate tax. Property qualifying for the marital deduction (Article IV) would also fall into this category. Such an approach seems fair and reasonable in that it places the burden of the estate tax upon *694 the property that gave rise to the estate tax. The statute goes on to provide that a decedent, by will or other written instrument, may direct a method of apportionment different from that provided in the statute, and the method so provided by a decedent will control. In this case, the only direction by decedent is in Article I of his will which contains rather standard "boilerplate" language directing the payment of all debts, expenses, "inheritance and estate taxes as soon after my death as may be convenient." This is nothing more than a direction by decedent to his representative to do what the law requires him to do. It seems that this falls far short of directing a method of apportionment which would override the Minnesota apportionment statute. In In re Estate of Kapala, 402 N.W.2d 150, 153 (Minn. App. 1987), the Court of Appeals of Minnesota quoted with approval In re Estate of Huffaker, 641 P.2d 120, 121 (Utah 1982), as follows: "We concur in what is apparently the general rule, that there is a strong policy in favor of the equitable allocation of the tax burden provided in the statute prescribing apportionment, and that a direction *695 to the contrary in a will or other dispositive instrument must be expressed in terms that are specific, clear, and not susceptible of reasonable contrary interpretation." We do not think decedent used terms which were "specific, clear, and not susceptible of reasonable contrary interpretation" to direct against apportionment. He could have done so if that was his intention. We also have considered two Minnesota cases dealing with the payment of estates' debts out of statutory homesteads -- Overvold v. Nelson, 186 Minn. 359, 243 N.W. 439, 440 (1932) and In re Norseth's Estate, 121 Minn. 104, 140 N.W. 337 (1913). In these cases, a statute provided that homesteads generally were exempt from an estate's debts, although the decedent could direct otherwise by will. In both cases, the wills contained a general direction to pay all debts. In each case, it was held that the general direction was not sufficient to override the statutory exemption granted to homesteads. In Overvold v. Nelson, supra, the Supreme Court of Minnesota applied the homestead exemption to the proceeds of the sale of the homestead. The court stated that *696 -- A testator may, by express provisions of his will, make his debts a charge upon his homestead * * *. But something more is required than a general direction to pay the debts. * * * [Overvold v. Nelson, supra at 441.] In In re Norseth's Estate, supra at 339, the Court said -- The direction to "pay all my just debts out of my estate" is a purely formal phrase, commonly employed and really superfluous. To give it the meaning that it amounts to a direction by the testator that the homestead * * * be charged with * * * his debts would be *1977 to attach altogether too much significance to a[n] * * * expression that really means nothing. [Emphasis added.] In Overvold and Norseth's Estate, the Minnesota Supreme Court held that a general direction was not sufficient to override the statutory exemption granted to homesteads. We believe in the present case that the Supreme Court of Minnesota would hold that the general direction to pay all estate taxes is not sufficient to override the apportionment statute. See also First Nat. Bank of Miami v. First Trust Co. of St. Paul, 242 Minn. 226, 64 N.W.2d 524, 527 (1954) *697 and Gelin v. Gelin, 229 Minn. 516, 40 N.W.2d 342 (1949). A Minnesota case on the apportionment of estate taxes is In re Estate of Shapiro, 380 N.W.2d 796 (Minn. 1986), in which the Supreme Court of Minnesota held that the surviving spouse's elective share (which qualified for the marital deduction) should be calculated before the computation of a Federal estate tax with the result that the elective share would not bear the burden of estate taxes. The will contained a specific direction that "my Executors * * * pay * * * estate taxes * * * becoming due by reason of my death * * * out of my residuary estate before distribution thereof * * *." In re Estate of Shapiro, supra at 800. The court did not find it necessary to resolve the question of whether a spouse's election to take a statutory share, instead of the property given to the spouse under the will, constituted a renunciation of the entire will, thereby eliminating the specific instruction to apply the testamentary, not the statutory, tax apportionment scheme. The Minnesota Supreme Court said "The state has a strong interest in protecting surviving spouses and in maintaining the elective *698 share scheme" and found that the Minnesota statute mandated "that the share be calculated before the Federal estate tax is computed in accordance with the congressional intent behind the marital deduction." In re Estate of Shapiro, supra at 801. The congressional intent underlying the marital deduction was that surviving spouses in noncommunity property States should receive treatment identical to surviving spouses in community property States. To effect this goal, the marital deduction must allow up to one-half of the adjusted gross estate to pass to the surviving spouse free from Federal estate tax. In re Estate of Shapiro, supra at 798-799. Although the Estate of Shapiro dealt with property passing outside the will, we conclude that the Minnesota Supreme Court's interest in protecting surviving spouses and carrying out the congressional intent behind the marital deduction gives support to the conclusion that in the present case, the Minnesota Supreme Court would not charge estate taxes to the marital deduction bequest without far more specific instructions than were contained in decedent's will. Based on the foregoing, we conclude that the Supreme Court *699 of Minnesota would hold that the general direction contained in decedent's will was merely a direction to do what the law requires without specifying the source of payment and that it is not a specific direction which would override the general statutory scheme of the apportionment statute. Accordingly, we hold for petitioner on this issue. We have considered the various arguments made by respondent, particularly his reference to opinions in other States which would interpret the language similar to that contained in Article I of decedent's will as a direction against apportionment. Although respondent's position is not unreasonable, we are persuaded based upon a consideration of Minnesota cases that the Supreme Court of Minnesota would find in favor of the statutory apportionment scheme. The next issue is whether extrinsic evidence is admissible to establish a testator's intent. Under Minnesota law, extrinsic evidence is considered only when a will is ambiguous. In re Hartman, 347 N.W.2d 480, 484 (Minn. 1984); In re Silverson's Will, 214 Minn. 313, 8 N.W.2d 21, 23 (1943). We have reached conclusions under Minnesota law to the best of our ability *700 based on the language within the four corners of decedent's will. Thus, it was not necessary to, and we did not, consider any of the extrinsic evidence offered by petitioner. Decision will be entered under Rule 155.